## COMMISSIONER OF INTERNAL REVENUE *v.* SCHLEIER ET AL.

No. 94–500.   Argued March 27, 1995—Decided June 14, 1995

STEVENS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and KENNEDY, GINSBURG, and BREYER, JJ., joined. SCALIA, J., concurred in the judgment. O'CONNOR, J., filed a dissenting opinion, in which THOMAS, J., joined, and in Part II of which SOUTER, J., joined, *post*, p. 337.

*Kent L. Jones* argued the cause for petitioner. With him on the briefs were *Solicitor General Days, Assistant Attorney General Argrett, Deputy Solicitor General Wallace,* and *Ann B. Durney.*

*Thomas F. Joyce* argued the cause for respondents. With him on the brief were *Alan M. Serwer* and *Raymond C. Fay.**

JUSTICE STEVENS delivered the opinion of the Court.

The question presented is whether § 104(a)(2) of the Internal Revenue Code authorizes a taxpayer to exclude from his

---

*Briefs of *amici curiae* urging affirmance were filed for the Equal Employment Advisory Council by *Douglas S. McDowell, Ann Elizabeth Reesman,* and *Kimberly L. Japinga;* for the Migrant Legal Action Program, Inc., by *Collette C. Goodman, Julie M. Edmond,* and *Robert B. Wasserman;* and for the Pan Am Pilots Tax Group by *Sanford Jay Rosen* and *Thomas Nolan.*

*Cathy Ventrell-Monsees* and *L. Steven Platt* filed a brief for the American Association of Retired Persons et al. as *amici curiae.*

gross income the amount received in settlement of a claim for backpay and liquidated damages under the Age Discrimination in Employment Act of 1967 (ADEA).

## I

Erich Schleier (respondent)[1] is a former employee of United Airlines, Inc. (United). Pursuant to established policy, United fired respondent when he reached the age of 60. Respondent then filed a complaint in Federal District Court alleging that his termination violated the ADEA.

The ADEA "broadly prohibits arbitrary discrimination in the workplace based on age." *Lorillard* v. *Pons,* 434 U. S. 575, 577 (1978); *Trans World Airlines, Inc.* v. *Thurston,* 469 U. S. 111, 120 (1985); see also *McKennon* v. *Nashville Banner Publishing Co.,* 513 U. S. 352, 357 (1995). Subject to certain defenses, see 29 U. S. C. § 623(f) (1988 ed. and Supp. V), §§ 4 and 12 of the ADEA make it unlawful for an employer, *inter alia,* to discharge any individual between the ages of 40 and 70 "because of such individual's age." 29 U. S. C. §§ 623(a)(1), 631(a). The ADEA incorporates many of the enforcement and remedial mechanisms of the Fair Labor Standards Act of 1938 (FLSA). Like the FLSA, the ADEA provides for "such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter." 29 U. S. C. § 626(b). That relief may include "without limitation judgments compelling employment, reinstatement or promotion." *Ibid.* More importantly for respondent's purposes, the ADEA incorporates FLSA provisions that permit the recovery "of wages lost and an additional equal amount as liquidated damages." § 216(b). See generally *McKennon,* 513 U. S., at 357.

---

[1] Helen Schleier is also a respondent because she and her husband Erich filed a joint return.

Despite these broad remedial mechanisms, there are two important constraints on courts' remedial power under the ADEA. First, unlike the FLSA, the ADEA specifically provides that "liquidated damages shall be payable only in cases of willful violations of this chapter." 29 U. S. C. § 626(b); see *Trans World Airlines, Inc.* v. *Thurston,* 469 U. S., at 125. Second, the Courts of Appeals have unanimously held, and respondent does not contest, that the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress.[2]

Respondent's ADEA complaint was consolidated with a class action brought by other former United employees challenging United's policy. The ADEA claims were tried before a jury, which determined that United had committed a willful violation of the ADEA. The District Court entered judgment for the plaintiffs, but that judgment was reversed on appeal. See *Monroe* v. *United Air Lines, Inc.,* 736 F. 2d 394 (CA7 1984). The parties then entered into a settlement, pursuant to which respondent received $145,629. Half of respondent's award was attributed to "backpay" and half to "liquidated damages." United did not withhold any payroll or income taxes from the portion of the settlement attributed to liquidated damages.

---

[2] See, *e. g., Vazquez* v. *Eastern Air Lines, Inc.,* 579 F. 2d 107 (CA1 1978); *Johnson* v. *Al Tech Specialties Steel Corp.,* 731 F. 2d 143, 147 (CA2 1984); *Rogers* v. *Exxon Research & Engineering Co.,* 550 F. 2d 834 (CA3 1977); *Slatin* v. *Stanford Research Institute,* 590 F. 2d 1292 (CA4 1979); *Dean* v. *American Security Ins. Co.,* 559 F. 2d 1036 (CA5 1977), cert. denied, 434 U. S. 1066 (1978); *Hill* v. *Spiegel, Inc.,* 708 F. 2d 233 (CA6 1983); *Pfeiffer* v. *Essex Wire Corp.,* 682 F. 2d 684, 687–688 (CA7), cert. denied, 459 U. S. 1039 (1982); *Fiedler* v. *Indianhead Truck Line, Inc.,* 670 F. 2d 806 (CA8 1982); *Schmitz* v. *Commissioner,* 34 F. 3d 790 (CA9 1994); *Perrell* v. *FinanceAmerica Corp.,* 726 F. 2d 654 (CA10 1984); *Goldstein* v. *Manhattan Industries, Inc.,* 758 F. 2d 1435, 1446 (CA11 1985). See generally H. Eglit, 2 Age Discrimination § 18.19 (1982 and Supp. 1984); J. Kalet, Age Discrimination in Employment Law 110–111 (1986).

When respondent filed his 1986 federal income tax return, he included as gross income the backpay portion of the settlement, but excluded the portion attributed to liquidated damages. The Commissioner issued a deficiency notice, asserting that respondent should have included the liquidated damages as gross income. Respondent then initiated proceedings in the Tax Court, claiming that he had properly excluded the liquidated damages. Respondent also sought a refund for the tax he had paid on the backpay portion of the settlement. The Tax Court agreed with respondent that the entire settlement constituted "damages received . . . on account of personal injuries or sickness" within the meaning of § 104(a)(2) of the Tax Code and was therefore excludable from gross income. Relying on a prior Circuit decision that had in turn relied on our decision in *United States* v. *Burke*, 504 U. S. 229 (1992), the Court of Appeals for the Fifth Circuit affirmed. Judgt. order reported at 26 F. 3d 1119 (1994). Because the Courts of Appeals have reached inconsistent conclusions as to the taxability of ADEA recoveries in general and of the United settlement in particular, compare *Downey* v. *Commissioner*, 33 F. 3d 836 (CA7 1994) (United settlement award is taxable), with *Schmitz* v. *Commissioner*, 34 F. 3d 790 (CA9 1994) (United settlement award is excludable), we granted certiorari, 513 U. S. 998 (1994). Our consideration of the plain language of § 104(a), the text of the regulation implementing § 104(a)(2), and our reasoning in *Burke* convince us that a recovery under the ADEA is not excludable from gross income.

## II

Section 61(a) of the Internal Revenue Code provides a broad definition of "gross income": "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived." 26 U. S. C. § 61(a). We have repeatedly emphasized the "sweeping scope" of this section and its statutory predecessors. *Commissioner* v. *Glenshaw*

*Glass Co.*, 348 U. S. 426, 429 (1955). See also *United States* v. *Burke*, 504 U. S., at 233; *Helvering* v. *Clifford*, 309 U. S. 331, 334 (1940). We have also emphasized the corollary to § 61(a)'s broad construction, namely, the "default rule of statutory interpretation that exclusions from income must be narrowly construed." *United States* v. *Burke*, 504 U. S., at 248 (SOUTER, J., concurring in judgment); see *United States* v. *Centennial Savings Bank FSB*, 499 U. S. 573, 583–584 (1991); *Commissioner* v. *Jacobson*, 336 U. S. 28, 49 (1949); *United States* v. *Burke*, 504 U. S., at 244 (SCALIA, J., concurring in judgment).

Respondent recognizes § 61(a)'s "sweeping" definition and concedes that his settlement constitutes gross income unless it is expressly excepted by another provision in the Tax Code. Respondent claims, however, that his settlement proceeds are excluded from § 61(a)'s reach by 26 U. S. C. § 104(a).[3] Section 104(a) provides an exclusion for five cate-

---

[3] At the time of respondent's return, § 104(a) provided in relevant part: "Compensation for injuries or sickness

"(a) In general.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include—

"(1) amounts received under workmen's compensation acts as compensation for personal injuries or sickness;

"(2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness;

"(3) amounts received through accident or health insurance for personal injuries or sickness (other than amounts received by an employee, to the extent such amounts (A) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (B) are paid by the employer);

"(4) amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country or in the Coast and Geodetic Survey or the Public Health Service, or as a disability annuity payable under the provisions of section 808 of the Foreign Service Act of 1980; and

"(5) amounts received by an individual as disability income attributable to injuries incurred as a direct result of a violent attack which the Secre-

gories of "compensation for personal injuries or sickness." Respondent argues that his settlement award falls within the second of those categories, which excludes from gross income "the amount of any damages received . . . on account of personal injuries or sickness."   § 104(a)(2).

In our view, the plain language of the statute undermines respondent's contention.   Consideration of a typical recovery in a personal injury case illustrates the usual meaning of "on account of personal injuries."   Assume that a taxpayer is in an automobile accident, is injured, and as a result of that injury suffers (a) medical expenses, (b) lost wages, and (c) pain, suffering, and emotional distress that cannot be measured with precision.   If the taxpayer settles a resulting lawsuit for $30,000 (and if the taxpayer has not previously deducted her medical expenses, see § 104(a)), the entire $30,000 would be excludable under § 104(a)(2).   The medical expenses for injuries arising out of the accident clearly constitute damages received "on account of personal injuries." Similarly, the portion of the settlement intended to compensate for pain and suffering constitutes damages "on account of personal injury."[4]   Finally, the recovery for lost wages is also excludable as being "on account of personal injuries," as long as the lost wages resulted from time in which the taxpayer was out of work as a result of her injuries.   See, e. g.,

tary of State determines to be a terrorist attack and which occurred while such individual was an employee of the United States engaged in the performance of his official duties outside the United States."   26 U. S. C. § 104 (1988 ed. and Supp. V).

In 1989, § 104(a) was amended, adding, inter alia, the following provision: "Paragraph (2) shall not apply to any punitive damages in connection with a case not involving physical injury or physical sickness."   Ibid.

[4] Though the text of § 104(a)(2) might be considered ambiguous on this point, it is by now clear that § 104(a)(2) encompasses recoveries based on intangible as well as tangible harms.   See United States v. Burke, 504 U. S. 229, 235, n. 6 (1992); id., at 244, and n. 3 (SCALIA, J., concurring in judgment) (acknowledging that "'personal injuries or sickness'" includes nonphysical injuries).

*Threlkeld* v. *Commissioner*, 87 T. C. 1294, 1300 (1986) (hypo-
thetical surgeon who loses finger through tortious conduct
may exclude any recovery for lost wages because "[t]his in-
jury . . . will also undoubtedly cause special damages includ-
ing loss of future income"), aff'd, 848 F. 2d 81 (CA6 1988).
The critical point this hypothetical illustrates is that each
element of the settlement is recoverable not simply because
the taxpayer received a tort settlement, but rather because
each element of the settlement satisfies the requirement set
forth in § 104(a)(2) (and in all of the other subsections of
§ 104(a)) that the damages were received "on account of
personal injuries or sickness."

In contrast, no part of respondent's ADEA settlement is
excludable under the plain language of § 104(a)(2). Respond-
ent's recovery of back wages, though at first glance compara-
ble to our hypothetical accident victim's recovery of lost
wages, does not fall within § 104(a)(2)'s exclusion because it
does not satisfy the critical requirement of being "on account
of personal injury or sickness." Whether one treats re-
spondent's attaining the age of 60 or his being laid off on
account of his age as the proximate cause of respondent's loss
of income, neither the birthday nor the discharge can fairly
be described as a "personal injury" or "sickness." More-
over, though respondent's unlawful termination may have
caused some psychological or "personal" injury comparable
to the intangible pain and suffering caused by an automobile
accident, it is clear that no part of respondent's recovery of
back wages is attributable to that injury. Thus, in our auto-
mobile hypothetical, the accident causes a personal injury
which in turn causes a loss of wages. In age discrimination,
the discrimination causes both personal injury and loss of
wages, but neither is linked to the other. The amount of
back wages recovered is completely independent of the exist-
ence or extent of any personal injury. In short, § 104(a)(2)
does not permit the exclusion of respondent's back wages

because the recovery of back wages was not "on account of" any personal injury and because no personal injury affected the amount of back wages recovered.

Respondent suggests, nonetheless, that the liquidated damages portion of his settlement fits comfortably within the plain language of § 104(a)(2)'s exclusion. He cites our observation in *Overnight Motor Transp. Co.* v. *Missel*, 316 U. S. 572 (1942), that liquidated damages under the FLSA "are compensation, not a penalty or punishment," and that such damages might compensate for "damages too obscure and difficult of proof for estimate." *Id.*, at 584–585; see also *Brooklyn Savings Bank* v. *O'Neil*, 324 U. S. 697, 707 (1945). He argues that Congress must be presumed to have known of our interpretation of liquidated damages when it incorporated FLSA's liquidated damages provision into the ADEA, and that Congress must therefore have intended that liquidated damages under the ADEA serve, at least in part, to compensate plaintiffs for personal injuries that are difficult to quantify.

We agree with respondent that if Congress had intended the ADEA's liquidated damages to compensate plaintiffs for personal injuries, those damages might well come within § 104(a)(2)'s exclusion. There are, however, two weaknesses in respondent's argument. First, even if we assume that Congress was aware of the Court's observation in *Overnight Motor* that the liquidated damages authorized by the FLSA might provide compensation for some "obscure" injuries, it does not necessarily follow that Congress would have understood that observation as referring to injuries that were personal rather than economic. Second, and more importantly, we have previously rejected respondent's argument: We have already concluded that the liquidated damages provisions of the ADEA were a significant departure from those in the FLSA, see *Lorillard* v. *Pons*, 434 U. S., at 581; *Trans World Airlines, Inc.* v. *Thurston*, 469 U. S., at 126, and we

explicitly held in *Thurston:* "Congress intended for liqui-
dated damages to be punitive in nature." *Id.*, at 125.[5]

Our holding in *Thurston* disposes of respondent's argu-
ment and requires the conclusion that liquidated damages
under the ADEA, like back wages under the ADEA, are not
received "on account of personal injury or sickness."[6]

---

[5] We find it noteworthy that the Court in *Thurston* was presented with
many of the arguments offered by respondent today. For example, to
counter the argument that "the ADEA liquidated damages provision is
punitive," the Equal Employment Opportunity Commission (EEOC) ar-
gued that "the legislative history of the liquidated damages provision in
the ADEA—as in the FLSA—shows that such damages are designed to
provide full compensation to the employee, rather than primarily to punish
the employer." Brief for EEOC in *Transworld Airlines, Inc.* v. *Thurston*,
O. T. 1984, Nos. 83–997 and 83–1325, p. 36. The EEOC continued: "Thus,
Congress focused on the need to be fair to the *employee*, and to provide
him full compensation for nonpecuniary damages not readily calculable,
including emotional injuries such as humiliation and loss of self respect."
*Id.*, at 36–37. See also *id.*, at 37 (relying on *Overnight Motor Transp.
Co.* v. *Missel*, 316 U. S. 572 (1942)). Against this background, the Court's
statement that "Congress intended for liquidated damages to be punitive
in nature" can only be taken as a rejection of the argument that those
damages are also (or are exclusively) compensatory.

We recognize that the House Conference Report accompanying the 1978
Amendments to the ADEA contains language that supports respondent.
See H. R. Conf. Rep. No. 95–950 (1978). However, this evidence was be-
fore the Court in *Thurston*, see Brief for EEOC, at 37, and the Court did
not find it persuasive. We see no reason to reach a different result now.

Moreover, there is much force to the Court's conclusion in *Thurston*
that the ADEA's liquidated damages provisions are punitive. Under our
decision in *Thurston*, liquidated damages are only available under the
ADEA if "the employer . . . knew or showed reckless disregard for the
matter of whether its conduct was prohibited by the ADEA." 469 U. S.,
at 126 (internal quotation marks omitted). If liquidated damages were
designed to compensate ADEA victims, we see no reason why the employ-
er's knowledge of the unlawfulness of his conduct should be the determina-
tive factor in the award of liquidated damages.

[6] We find odd the dissent's suggestion, *post*, at 341–342, that our holding
today assumes that the intangible harms of discrimination do not constitute
personal injuries. We of course have no doubt that the intangible harms of
discrimination can constitute personal injury, and that compensation for

## III

Respondent seeks to circumvent the plain language of § 104(a)(2) by relying on the Commissioner's regulation interpreting that section. Section 1.104–1(c) of the Treasury Regulations, 26 CFR § 1.104–1(c) (1994), provides:

> "Section 104(a)(2) [of the Internal Revenue Code] excludes from gross income the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness. The term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution."

Respondent contends that an action to recover damages for a violation of the ADEA is "based upon tort or tort type rights" as those terms are used in that regulation, and that his settlement is thus excludable under the plain language of the regulation.

Even if we accept respondent's characterization of the action, but see *infra,* at 336, there is no basis for excluding the proceeds of his settlement from his gross income. The regulatory requirement that the amount be received in a tort type action is not a substitute for the statutory requirement that the amount be received "on account of personal injuries or sickness"; it is an additional requirement. Indeed, the statutory requirement is repeated in the regulation. As the Commissioner argues in her reply brief, an exclusion from gross income is authorized by the regulation "only when it both (i) was received through prosecution or settlement of an 'action based upon tort or tort type rights'. . . and (ii) was received

such harms may be excludable under § 104(a)(2). However, to acknowledge that discrimination may cause intangible harms is not to say that the ADEA compensates for such harms, or that any of the damages received were on account of those harms.

'on account of personal injuries or sickness.'" Reply Brief for Petitioner 2.[7] We need not decide whether the Commissioner would have authority to dispense entirely with the statutory requirement, because she disclaims any intent to do so, and the text of the regulation does not belie her disclaimer. Thus, respondent's reliance on the text of the regulation is unpersuasive.

## IV

Respondent also suggests that our decision in *United States* v. *Burke*, 504 U. S. 229 (1992), compels the conclusion that his settlement award is excludable. In *Burke*, we rejected the taxpayer's argument that the payment received in settlement of her backpay claim under the pre-1991 version of Title VII of the Civil Rights Act of 1964 was excludable from her gross income. Our decision rested on the conclusion that such a claim was not based upon "tort or tort type rights" within the meaning of the regulation quoted above. For two independent reasons, we think *Burke* provides no foundation for respondent's argument.

First, respondent's ADEA recovery is not based upon "tort or tort type rights" as that term was construed in *Burke*. In *Burke*, we examined the remedial scheme established by the pre-1991 version of Title VII. Noting that "Title VII does not allow awards for compensatory or punitive damages," and that "instead, it limits available remedies to backpay, injunctions, and other equitable relief," we con-

---

[7] We recognize that the Commissioner has arguably in the past treated the regulation as though its second sentence superseded the first sentence. See, *e. g.*, *United States* v. *Burke*, 504 U. S., at 242, n. 1 (SCALIA, J., concurring in judgment). In this case, however, the Commissioner unambiguously contends that the regulation is not intended to eliminate the "on account of" requirement from the statutory language. In view of the Commissioner's differing interpretations of her own regulation, we do not accord her present litigating position any special deference. We do agree, however, that she reads the regulation correctly in this case.

cluded that Title VII was not tortlike because it addressed "'legal injuries of an economic character.'" 504 U. S., at 238, 239.

Respondent points to two elements of the ADEA that he argues distinguish it from the remedial scheme at issue in *Burke:* First, the ADEA provides for jury trial, see 29 U. S. C. § 626(b); *Lorillard* v. *Pons,* 434 U. S., at 585; but cf. *Lehman* v. *Nakshian,* 453 U. S. 156 (1981); and second, the ADEA allows for liquidated damages. We do not believe that these features of the ADEA are sufficient to bring it within *Burke's* conception of a "tort type righ[t]." It is true, as respondent notes, that we emphasized in *Burke* the lack of a right to a jury trial and the absence of any provision for punitive damages as factors distinguishing the pre-1991 Title VII action from traditional tort litigation, 504 U. S., at 238–240. We did not, however, indicate that the presence of either or both of those factors would be sufficient to bring a statutory claim within the coverage of the regulation.

In our view, respondent's argument gives insufficient attention to what the *Burke* Court recognized as the primary characteristic of an "action based upon . . . tort type rights": the availability of compensatory remedies. Indeed, we noted that "one of the hallmarks of traditional tort liability is the availability of a broad range of damages to compensate the plaintiff 'fairly for injuries caused by the violation of his legal rights.'" *Id.,* at 235. We continued: "Although these damages often are described in compensatory terms . . . , in many cases they are larger than the amount necessary to reimburse actual monetary loss sustained or even anticipated by the plaintiff, and thus redress intangible elements of injury that are deemed important, even though not pecuniary in [their] immediate consequence[s]." *Ibid.* (internal quotation marks omitted). Against this background, we found critical that the pre-1991 version of Title VII provided no compensation "for any of the other traditional harms associated with personal injury, such as pain and suffering, emo-

tional distress, harm to reputation, or other consequential damages." *Id.*, at 239.

Like the pre-1991 version of Title VII, the ADEA provides no compensation "for any of the other traditional harms associated with personal injury." Monetary remedies under the ADEA are limited to back wages, which are clearly of an "economic character," and liquidated damages, which we have already noted serve no compensatory function. Thus, though this is a closer case than *Burke*, we conclude that a recovery under the ADEA is not one that is "based upon tort or tort type rights."

Second, and more importantly, the holding of *Burke* is narrower than respondent suggests. In *Burke*, following the framework established in the Internal Revenue Service regulations, we noted that § 104(a)(2) requires a determination whether the underlying action is "based upon tort or tort type rights." *Id.*, at 234. In so doing, however, we did not hold that the inquiry into "tort or tort type rights" constituted the beginning and end of the analysis. In particular, though *Burke* relied on Title VII's failure to qualify as an action based upon tort type rights, we did not intend to eliminate the basic requirement found in both the statute and the regulation that only amounts received "on account of personal injuries or sickness" come within § 104(a)(2)'s exclusion. Thus, though satisfaction of *Burke*'s "tort or tort type" inquiry is a necessary condition for excludability under § 104(a)(2), it is not a sufficient condition.[8]

In sum, the plain language of § 104(a)(2), the text of the applicable regulation, and our decision in *Burke* establish

---

[8] We recognize that a recent Revenue Ruling from the IRS seems to rely on the same reading of *Burke* urged by respondent. See Rev. Rul. 93–88, 1993–2 Cum. Bull. 61. Though this Revenue Ruling is not before us, we note that "the Service's interpretive rulings do not have the force and effect of regulations," *Davis* v. *United States*, 495 U. S. 472, 484 (1990), and they may not be used to overturn the plain language of a statute. See, *e. g.*, *Bartels* v. *Birmingham*, 332 U. S. 126, 132 (1947).

two independent requirements that a taxpayer must meet before a recovery may be excluded under § 104(a)(2). First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights"; and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness." For the reasons discussed above, we believe that respondent has failed to satisfy either requirement, and thus no part of his settlement is excludable under § 104(a)(2).

The judgment is reversed.

*It is so ordered.*

JUSTICE SCALIA concurs in the judgment.

JUSTICE O'CONNOR, with whom JUSTICE THOMAS joins, and with whom JUSTICE SOUTER joins with respect to Part II, dissenting.

Age discrimination inflicts a personal injury. Even under the principles set forth in *United States* v. *Burke,* 504 U. S. 229 (1992), the damages received from a claim of such discrimination under the Age Discrimination in Employment Act of 1967 (ADEA) are received "on account of" that personal injury and therefore excludable from taxable income under 26 U. S. C. § 104(a)(2). Unless the Court reads § 104(a)(2) to permit exclusion only of damages received for tangible injuries (*i. e.,* physical and mental injuries)—a reading rejected by eight Members of the Court in *Burke* and contradicted by an agency's reasonable interpretation of the statute it administers—the inescapable conclusion is that ADEA damages awards, are excludable.

I

It is not disputed that the damages received by respondents constitute gross income under 26 U. S. C. § 61(a) unless excluded elsewhere; the question is whether such damages fall within § 104(a)(2), which excludes from taxable income

"the amount of any damages received (whether by suit or agreement and whether as lump sums or periodic payments) on account of personal injuries or sickness . . . ." What constitutes "damages received on account of personal injuries" is not obvious from the text or history of the statute, and since 1960 Internal Revenue Service (IRS) regulations have defined the phrase with reference to traditional tort principles: "The term 'damages received (whether by suit or agreement)' means an amount received . . . through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." 25 Fed. Reg. 11490 (1960); 26 CFR § 1.104–1(c) (1994).

At one point in time, determining whether damages received from a lawsuit were excludable under § 104(a)(2) and the applicable regulation was a fairly straightforward task. In *Threlkeld* v. *Commissioner*, 87 T. C. 1294, 1299 (1986), aff'd, 848 F. 2d 81 (CA6 1988), the Tax Court, in a 15-to-1 decision, set forth the test as follows:

> "Section 104(a)(2) excludes from income amounts received as damages on account of personal injuries. Therefore, whether the damages received are paid on account of 'personal injuries' should be the beginning and the end of the inquiry. To determine whether the injury complained of is personal, we must look to the origin and character of the claim . . . , and not to the consequences that result from the injury." 87 T. C., at 1299.

Thus, under *Threlkeld*, damages from a lawsuit were excludable under § 104(a)(2) so long as they were received "on account of any invasion of the rights that an individual is granted by virtue of being a person in the sight of the law." *Id.*, at 1308.

Under this standard, ADEA damages surely are excludable. "[D]iscrimination in the workplace causes personal injury cognizable for purposes of § 104(a)(2), . . . and there

can be little doubt about this point." *Burke, supra,* at 249 (O'CONNOR, J., dissenting). We have recognized that "racial discrimination . . . is a fundamental injury to the individual rights of a person." *Goodman* v. *Lukens Steel Co.,* 482 U. S. 656, 661 (1987). Such offense to the rights and dignity of the individual attaches regardless of whether the discrimination is based on race, sex, age, or other suspect characteristics. See, *e. g., Price Waterhouse* v. *Hopkins,* 490 U. S. 228, 265 (1989) (O'CONNOR, J., concurring in judgment) ("[W]hatever the final outcome of a decisional process, the inclusion of race or sex as a consideration within it harms both society and the individual"); *EEOC* v. *Wyoming,* 460 U. S. 226, 231 (1983) (Age discrimination "inflict[s] on individual workers the economic and psychological injury accompanying the loss of the opportunity to engage in productive and satisfying occupations"). Thus, prior to 1992, courts generally relied on *Threlkeld* to hold that damages awarded under the ADEA were excludable from income because they were received on account of personal injuries. See, *e. g., Pistillo* v. *Commissioner,* 912 F. 2d 145 (CA6 1990); *Rickel* v. *Commissioner,* 900 F. 2d 655 (CA3 1990); *Redfield* v. *Insurance Co. of North America,* 940 F. 2d 542 (CA9 1991).

Things changed, however, with *United States* v. *Burke, supra.* In that case, the Court of Appeals, relying on *Threlkeld,* held that race discrimination violative of Title VII infringes upon a victim's personal rights and thus that damages received therefrom are properly excludable under § 104(a)(2). Agreeing that discrimination violates personal rights, this Court nevertheless reversed because the statutory remedies do not "recompense a Title VII plaintiff for any of the other traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages (*e. g.,* a ruined credit rating)." 504 U. S., at 239.

I dissented from the Court's decision in *Burke* because "the remedies available to Title VII plaintiffs do not fix the

character of the right they seek to enforce," *id.*, at 249, and I remain of that view today. Dean Prosser presciently observed years ago that "[t]he relation between the remedies in contract and tort presents a very confusing field, still in process of development, in which few courts have made any attempt to chart a path." W. Prosser, Law of Torts 635 (3d ed. 1964) (footnote omitted). Three decades later, and despite the Court's attempt to chart a path in *Burke* (or perhaps because of it), whether a remedy sounds in tort often depends on arbitrary characterizations. Compare *Schmitz* v. *Commissioner*, 34 F. 3d 790, 794 (CA9 1994) (ADEA liquidated damages are tortlike because they "compensate victims for damages which are too obscure and difficult to prove"), with *Downey* v. *Commissioner*, 33 F. 3d 836, 840 (CA7 1994) (ADEA liquidated damages, "as the name implies, compensate a party for those difficult to prove losses that often arise from a delay in the performance of obligations—as a type of contract remedy").

The Court today sidesteps these difficulties by laying down a new *per se* rule: An illegal discharge based on age cannot "fairly be described as a 'personal injury' or 'sickness.'" *Ante*, at 330. To justify this conclusion, the Court offers a hypothetical car crash, the injuries from which cause the taxpayer to miss work. She would be able, in such circumstances, to exclude the recovered lost wages because they would constitute damages received "'on account of personal injuries.'" *Ante*, at 329. By contrast, in the Court's view, ADEA damages are not excludable because they are not "'on account of' any personal injury and because no personal injury affected the amount of back wages recovered." *Ante*, at 331.

This reasoning assumes the wrong answer to the fundamental question of this case: What is a personal injury? Eight Justices in *Burke* agreed that discrimination inflicts a personal injury under § 104(a)(2). See 504 U. S., at 239–240; *id.*, at 247 (SOUTER, J., concurring in judgment); *id.*, at

249 (O'CONNOR, J., dissenting). Only JUSTICE SCALIA disagreed, arguing instead that the phrase "personal injuries" under § 104(a)(2) "is necessarily limited to injuries to physical or mental health," *id.*, at 244; in his view, employment discrimination, without more, does not inflict a personal injury because it is only a legal injury that causes economic deprivation, *ibid.* Whatever the merits of this view, it was rejected by the Court in *Burke* and wisely not advanced by the Commissioner in this case, see Brief for Petitioner 10, 25, n. 15.

Although the Court professes agreement with the view that "personal injury" within the meaning of § 104(a)(2) comprehends both tangible and intangible harms, *ante*, at 329, n. 4, the Court's analysis contradicts this fundamental premise. The Court's hypothetical contrast between wages lost due to a car crash and wages lost due to illegal discrimination would be significant only if one presumes that there is a relevant difference for purposes of § 104(a)(2) between the car crash and the illegal discrimination. But such a difference exists only if one reads "personal injuries," as JUSTICE SCALIA did in *Burke*, to include only tangible injuries. Those physical and mental injuries, of course, differ from the economic and stigmatic harms that discrimination inflicts upon its victims, but it is a difference without relevance under § 104(a)(2)—at least in the view of eight Justices in *Burke*, and the view that the Court professes to adopt today, *ante*, at 329, n. 4. The injuries from discrimination that the ADEA redresses—like the harm to reputation and loss of business caused by a dignitary tortlike defamation, see *Burke*, 504 U. S., at 234–235; *id.*, at 247 (SOUTER, J., concurring in judgment)—may not always manifest themselves in physical symptoms, but they are no less personal, see *supra*, at 339, and thus no less worthy of excludability under § 104(a)(2). The Court states: "Whether one treats respondent's attaining the age of 60 or his being laid off on account of his age as the proximate cause of respondent's loss of income,

neither the birthday nor the discharge can fairly be described as a 'personal injury' or 'sickness.'" *Ante*, at 330. This assertion, the key to the Court's analysis, is not reconcilable with the Court's recognition that the intangible harms of illegal discrimination constitute "personal injuries" under § 104(a)(2).

The Court argues that although "the intangible harms of discrimination can constitute personal injury" within the meaning of § 104(a)(2), "to acknowledge that discrimination may cause intangible harms is not to say . . . that any of the damages received were on account of those harms." *Ante*, at 333, n. 6. The logic of this argument is rather hard to follow. If the harms caused by discrimination constitute personal injury, then amounts received as damages for such discrimination are received "on account of personal injuries" and should be excludable under § 104(a)(2).

## II

Even overlooking this fundamental defect in the Court's analysis, ADEA damages should be excludable from taxable income under our precedents. The Court in *Burke* deferred to the applicable IRS regulation, 26 CFR § 1.104–1(c) (1991), and stated that "discrimination could constitute a 'personal injury' for purposes of § 104(a)(2) if the relevant cause of action evidenced a tort-like conception of injury and remedy." 504 U. S., at 239. The Court held that a suit based on Title VII was not based upon "tort or tort type rights," 26 CFR § 1.104–1(c) (1991), however, because Title VII does not entitle "victims of race-based employment discrimination to obtain a jury trial at which 'both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages' may be awarded." 504 U. S., at 240 (quoting *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 460 (1975)).

Unlike Title VII, the ADEA expressly provides that any person aggrieved may bring a civil action and "shall be enti-

tled to a *trial by jury* of any issue of fact in any . . . action for recovery of amounts owing as a result of a violation of this chapter," 29 U. S. C. § 626(c)(2) (emphasis added). More important, the ADEA does not limit relief to back wages, but instead authorizes courts to grant the panoply of "such *legal or equitable relief* as will effectuate the purposes" of the Act, 29 U. S. C. § 626(c)(1) (emphasis added), and it expressly provides for liquidated damages in addition to back wages, 29 U. S. C. § 626(b). The Court emphasizes that liquidated damages under the ADEA are punitive in nature, *ante*, at 331–332, but it is an emphasis without relevance. Punitive damages are traditionally available only in tort. See 3 D. Dobbs, Law of Remedies 118 (2d ed. 1993) ("The rule against punitive damages prevails even if the breach [of contract] is wilful or malicious, as long as the breach does not amount to an independent tort"). Thus, whether the liquidated damages available under the ADEA are characterized as compensatory, or as a form of punitive damages, it is clear that the remedies available under the ADEA go beyond Title VII's limited focus on " 'legal injuries of an economic character,' " *Burke, supra*, at 239 (quoting *Albemarle Paper Co* v. *Moody*, 422 U. S. 405, 418 (1975)). Plaintiffs claiming age discrimination, then, are not limited to the "circumscribed remedies available under Title VII," *Burke*, 504 U. S., at 240, but instead may sue under the ADEA, which appears to be one of the "other federal antidiscrimination statutes offering . . . broad remedies" distinguished by *Burke*, see *id.*, at 241.

These distinctions qualify an ADEA suit as a "tort type" action under *Burke*, and should entitle a prevailing plaintiff to exclude damages recovered therefrom from taxable income under § 104(a)(2) and the applicable IRS regulation, 26 CFR § 1.104–1(c) (1994). The Court seeks to avoid this conclusion by asserting that our decision in *Burke* and the IRS regulation that it interpreted do not conclusively determine the scope of § 104(a)(2). Both, according to the Court, *ante*, at 336, impose a necessary condition that the suit be tort

or tort like, but neither states that this showing is sufficient for excludability under § 104(a)(2). This contention is untenable.

The Court's decision in *Burke* makes clear that it was deciding conclusively what § 104(a)(2) permits to be excluded. After quoting the language of § 104(a)(2), the Court introduced its analysis with the following: "Neither the text nor the legislative history of § 104(a)(2) offers any explanation of the term 'personal injuries.' Since 1960, however, IRS regulations formally have linked identification of a personal injury for purposes of § 104(a)(2) to traditional tort principles." 504 U. S., at 234. The Court then quoted language from the IRS regulation, 26 CFR § 1.104–1(c) (1991), which identified recovery from a suit "'based on tort or tort type rights'" as the hallmark of excludability under § 104(a)(2). Every Member of the Court so understood the opinion—that the scope of § 104(a)(2) is defined in terms of traditional tort principles. See 504 U. S., at 246–247 (SOUTER, J., concurring in judgment); *id.*, at 249 (O'CONNOR, J., dissenting). Even JUSTICE SCALIA, who disagreed with the Court that "personal injury or sickness" included nonphysical injuries, see *id.*, at 243–244 (opinion concurring in judgment), agreed that the IRS regulation is "descriptive of the ambit of § 104(a)(2) as a whole," *id.*, at 242, n. 1.

For 35 years the IRS has consistently interpreted its regulation, 26 CFR § 1.104–1(c), as conclusively establishing the requirements of § 104(a)(2). See Rev. Rul. 85–98, 1985–2 Cum. Bull. 51. This was the interpretation the Commissioner pressed upon us in *Burke,* see Brief for United States in *United States* v. *Burke,* O. T. 1991, No. 91–42, pp. 22–23; formally affirmed after *Burke,* see Rev. Rul. 93–88, 1993–2 Cum. Bull. 61; presented to the courts below, see Brief for Appellant in No. 93–5555 (CA5), p. 28, n. 16; and advanced in the opening briefs before us, see Brief for Petitioner 14, n. 5, 16–17, n. 7. It is only in one sentence in her reply brief that the Commissioner expressed a view at odds with 35 years of

administrative rulings, agency practice, and representations to the courts—a sentence that the Court expands into its holding today.

The Court states that it does not accord the Commissioner's reply brief any special deference in light of the "differing interpretations of her own regulation," *ante,* at 334, n. 7. But ignoring the Commissioner's off-hand assertion in this case does not wipe the slate clean. There still remain 35 years of formal interpretations upon which taxpayers have relied and of agency positions upon which courts, including this one, have based their decisions. Unless the Court is willing to declare these positions to be unreasonable, they cannot be ignored. See *Lyng* v. *Payne,* 476 U. S. 926, 939 (1986). The Court asserts that "'the Service's interpretive rulings do not have the force and effect of regulations,'" *ante,* at 336, n. 8 (quoting *Davis* v. *United States,* 495 U. S. 472, 484 (1990)). That is true; it also says nothing about the deference courts must give to such reasonable interpretations, and a fuller exposition of our precedent indicates that the level of deference is substantial. *Davis* states: "Although the Service's interpretive rulings do not have the force and effect of regulations, we give an agency's interpretations and practices considerable weight where they involve the contemporaneous construction of a statute and where they have been in long use." *Ibid.* (citations omitted).

The Court states that the Commissioner "reads the regulation correctly in this case." *Ante,* at 334, n. 7. Even if true, that statement says nothing about whether her interpretation for the past 35 years is reasonable. Both may be reasonable; such is the nature of ambiguity. In any event, I do not agree that the Commissioner's reply brief correctly reads the regulation to impose a necessary, but not sufficient, condition for excludability under § 104(a)(2). Although the regulation purports to interpret the term "damages received (whether by suit or agreement)," that term is unambiguous; it plainly includes all kinds of damages—inflicted on property

or person, based on contract or tort, received by suit or agreement. Read in context, the regulation seeks to define the overall ambit of § 104(a)(2)—specifically the concept of "personal injuries," the ambiguity of which gives rise to controversies over the scope of the exclusion under § 104(a)(2). The regulation is subtitled, "Damages received on account of personal injuries or sickness," and its first sentence reads: "Section 104(a)(2) excludes from gross income the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness." 26 CFR § 1.104–1(c) (1994). In light of the expansive scope of these statements and the futility of any attempt to define only "damages received," the regulation is more sensibly read as defining the entire scope of § 104(a)(2).

Finally, the Court states that agency rules and regulations "may not be used to overturn the plain language of a statute." *Ante,* at 336, n. 8. But the language of the statute is anything but plain. As the Court noted in *Burke,* "[n]either the text nor the legislative history of § 104(a)(2) offers any explanation of the term 'personal injuries.'" 504 U. S., at 234. That is why the IRS promulgated its regulation in 1960 linking the slippery concept of personal injury to traditional tort principles. The Court today stops short of declaring this regulation unreasonable; it merely asserts that the regulation's requirement of a tort or tort like injury is in addition to, not in place of, the statutory requirement that the damages be received "on account of personal injuries or sickness." But, as noted above, it is not clear where besides the definition of personal injury there is room in the statute for the agency to graft on this additional requirement. It is surely more reasonable to read the regulation as defining an ambiguous statutory phrase, rather than as imposing a superfluous precondition without any statutory basis.

For these reasons, I respectfully dissent.