T.C. Memo. 2000-161

UNITED STATES TAX COURT

ESTATE OF KENNETH F. SCHOENEMAN, DECEASED,
JOANN METZ AND JAMES J. RILEY, EXECUTORS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15230-97.                      Filed May 18, 2000.

Sudhir R. Patel, for petitioners.

James Fee and Michael D. Baker, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, Judge: By notice dated April 15, 1997, respondent determined deficiencies of $38,110, $38,098, and $18,119, and section 6662(a) penalties of $7,622, $7,620, and $3,624, relating to Kenneth Schoeneman's 1993, 1994, and 1995 Federal income taxes, respectively. All section references are to the Internal Revenue Code in effect for the years in issue. The executors of

Kenneth's estate resided, and had a business address, in Pennsylvania when the petition was filed.

The issue for decision is whether Kenneth was entitled, pursuant to section 104(a)(2), to exclude from income payments received in settlement of a dispute.

FINDINGS OF FACT

Kenneth and his father built a large beauty salon enterprise (i.e., beauty salons, schools, and supply businesses), comprising three companies. Kenneth, who had a reputation for being impeccably dressed, became an owner and pilot of airplanes, district governor of the Rotary Club, and a prominent and proud businessman in Pottsville, Pennsylvania.

In 1977, Kenneth suffered a debilitating stroke that left him partially paralyzed. Kenneth never fully recovered from the stroke and remained in poor health until his death. After his stroke, Kenneth's businesses began to decline. At the request of his sons, Franklin and Dale, Kenneth, in 1980, redeemed his shares of stock in two of his companies in exchange for annuities and, in 1982, transferred the annuities, stock in his other company, and other property to two irrevocable trusts, for the benefit of himself and his wife, respectively, designating as trustees his sons and Pennsylvania National Bank and Trust Co. (bank). Franklin and Dale took over the businesses.

After the transfer of the businesses, Kenneth's home fell into disrepair, he had trouble paying for his custom-tailored clothing, and he regularly ate in a soup kitchen. When Kenneth discussed his sons he became so ill that his personal assistant would have to administer heart medication.

During and after 1985, Kenneth demanded additional distributions from the trustees and sought to regain control of his businesses. In January 1989, he retained Attorney James Riley, who filed an action against Dale, Franklin, and the bank on March 28, 1989, in the Pennsylvania Court of Common Pleas. On November 12, 1989, Riley refiled the action in the Orphans' Court, pursuant to an order of the Court of Common Pleas stating that "Exclusive jurisdiction over inter vivos trusts and the removal of fiduciaries of trusts is vested in the Orphans Court Division." Riley prepared, but did not file, a Racketeer Influenced and Corrupt Organizations Act (RICO) complaint against the sons and the bank. Both Riley and the sons' lawyer believed that Kenneth probably would not recover damages relating to the Orphans' Court and RICO complaints. Nevertheless, after the suit was filed, and throughout the course of the litigation, Riley contended that Kenneth's sons' actions were responsible for Kenneth's emotional distress and tarnished reputation.

On December 24, 1991, Kenneth entered into a Settlement Agreement and Release (settlement) with his sons, pursuant to

which they agreed to pay, from their personal funds, to their father, $104,000 per year.  The settlement, in pertinent part, provided:

> 5.  <u>Ken Schoeneman's Injuries and Demands</u>.  Ken Schoeneman believes, and has alleged in language required to bring the matter before the Orphan's Court, that Dale Schoeneman and Frank Schoeneman injured him both physically because of the mental distress visited upon him by virtue of the inadequate funding of the trusts for which a specific claim is barred by the statute of limitations, and in his personal reputation in the community by depriving him of funds which would have allowed him to live comfortably and maintain his place in the community and his status therein; degrading his position and his health over a period of time.
> * * *

> *        *        *        *        *        *        *

> 7.  <u>Tax Consequences</u>.
> (a)  It is the intention of the parties to this Agreement that all payments to Ken Schoeneman pursuant to Paragraph 6 hereof be considered compensation for the personal injuries specified in Paragraph 5 and be excluded from Ken Schoeneman's gross income for purposes of Federal income taxation pursuant to 26 U.S.C. §104(a), as amended or any successor thereto.
> (b)  It is the intention of the parties to this Agreement that all payments to Ken Schoeneman pursuant to Paragraph 6 hereof be considered ordinary and necessary expenses of Dale Schoeneman and Frank Schoeneman paid for the conservation, maintenance, preservation and protection of property held for the production of income and be subject to deduction by Dale Schoeneman and Frank Schoeneman for purposes of Federal income taxation pursuant to 26 U.S.C. §162 and/or §212, as amended; and any successor thereto.
> (c)  Notwithstanding the statement of intent specified in subparagraphs 7.(a) and 7.(b) above, the parties hereto agree the payments to be made to Ken Schoeneman pursuant to Paragraph 6 shall not be altered in timing or amount if the intended tax effects are not realized by Ken Schoeneman and/or Dale Schoeneman and Frank Schoeneman.

Kenneth did not report the payments on his returns. He died on July 14, 1995, a resident of Pennsylvania.

OPINION

Section 104(a)(2) provides that gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness". Thus, a taxpayer may exclude a recovery from gross income when he can show that: (1) The "underlying cause of action giving rise to the recovery is 'based upon tort or tort type rights'", and (2) "the damages were received 'on account of personal injuries or sickness.'" Commissioner v. Schleier, 515 U.S. 323, 337 (1995) (quoting United States v. Burke, 504 U.S. 229, 234 (1992)).

The estate contends that the settlement payments were damages received on account of personal injuries and, thus, are excludable pursuant to section 104(a)(2). Respondent contends that the $104,000 payments are not excludable because they were received on account of economic, rather than personal, injuries. Respondent further contends that no personal injury was alleged in a complaint by Kenneth. In support of his contentions, respondent asserts that the Orphans' Court did not have jurisdiction over tort damages and that Kenneth "could not have recovered personal injury damages had he actually filed a RICO complaint." We reject respondent's contentions. Our focus is

not on the jurisdiction of the Orphans' Court or the unavailability of personal injury damages pursuant to RICO because the determination of whether a settlement payment is exempt from taxation depends on the nature of the claim settled and not on the nature of the claim filed.  See Seay v. Commissioner, 58 T.C. 32, 37 (1972).

The settlement's terms, which are inconsistent, do not determine whether the payments are excludable.  See Robinson v. Commissioner, 102 T.C. 116, 129 (1994) (stating that "this Court will not blindly accept the terms contained in a settlement agreement," especially when those terms are tax-motivated), affd. in part, revd. in part and remanded on other grounds 70 F.3d 34 (5th Cir. 1995).  The testimony of the witnesses, however, leads us to conclude that the claims settled were in the nature of personal injury (i.e., stress, infliction of emotional distress, and damage to health) and based upon tort or tort type rights. None of the parties believed that Kenneth would recover damages relating to the Orphans' Court and RICO claims.  The personal injury claim, however, while not filed, was viable.  The sons paid the settlement on account of this claim.  The facts of this case are consistent with those of Seay, where we held that damages were excludable, although the claim was not prepared or filed, when the taxpayer's attorney believed his client had a personal injury claim, the payer's attorney knew of the claim,

the claim was part of the negotiation, and an agreement allocated proceeds to such claim.  Riley believed that Kenneth had suffered personal injury, Franklin and the sons' lawyer testified that they knew of the personal injury claims and that those claims were discussed during the course of the litigation, and the settlement indicates that those claims were part of the negotiation.  Cf. Commissioner v. Schleier, supra (finding that the taxpayer asserted, and the parties negotiated, an age discrimination in employment, but not a personal injury, claim); United States v. Burke, supra (finding that the taxpayer asserted, and the parties negotiated, a sex discrimination in employment, but not a personal injury, claim).

Accordingly, the payments were received on account of personal injuries and are excludable pursuant to section 104(a)(2).  Consequently, section 6662(a) is not applicable.

Contentions not addressed are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for petitioners.