T.C. Memo. 2011-44


UNITED STATES TAX COURT


BARON L. OLIVER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 5231-06, 16845-06.    Filed February 24, 2011.


Baron L. Oliver, pro se.

<u>Ric D. Hulshoff</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined Federal income tax deficiencies and additions to tax as follows:

|  |  | Additions to Tax | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
| 2000 | $10,163.00 | $1,234.80 | $2,540.75 | $265.40 |
| 2001 | 6,082.00 | 999.00 | 954.60 | -0- |
| 2002 | 88,833.00 | 19,987.43 | 13,769.12 | -0- |
| 2003 | 37,460.00 | 6,345.00 | 3,384.00 | 711.05 |
| 2004 | 26,141.80 | 5,794.61 | 1,545.23 | 746.32 |

In an amendment to the answer, respondent asserted an increased deficiency and additions to tax for 2001 that were based on income not included in the notice of deficiency but now stipulated. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues for decision are whether settlement proceeds of $201,000 petitioner received during 2002 were taxable; whether petitioner received income from real property sold in 2004 and, if so, how much; whether petitioner is entitled to deductions or exemptions not allowed in the statutory notices; whether petitioner is liable for additions to tax under section 6651(a)(1) for each year; and whether petitioner is liable for additions to tax under section 6654 for 2000, 2003, and 2004.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At all material times, petitioner resided in Arizona and was married to

Micka Oliver.  Petitioner and Micka Oliver (the Olivers) were married in 1970.

Prior to April 3, 2001, petitioner was employed by Qwest Corp. (Qwest).  On July 9, 1997, petitioner filed a complaint against Qwest in the Arizona Superior Court (the Qwest lawsuit). On August 31, 1998, petitioner and Qwest entered into a stipulation regarding the scope of the Qwest lawsuit, limiting petitioner's claims to his common law claims, claims he was subjected to a "hostile environment" because of an alleged disability, and claims of failure to provide a reasonable accommodation.

Petitioner's "disability discrimination" claim was based on four discrete incidents:

Petitioner's claim that his supervisor failed to inform him about an American Indian Leadership Initiative * * * training session;

Petitioner's claim that his supervisor improperly scheduled him to work on a weekend prior to a planned vacation;

Petitioner's claim that he was laughed at in response to his request for a workstation near the door in a new crew room; and

Petitioner's claim that he was improperly denied sick benefits on April 21, 1996.

Petitioner's "reasonable accommodation" claim was based on two specific requests:

Petitioner's request for a workstation near a door; and

Petitioner's request for a vehicle with a factory air conditioning, as opposed to after-market air conditioning.

Petitioner also filed a lawsuit in the U.S. District Court for the District of Arizona and participated in an arbitration of a grievance relating to his discharge by Qwest and to a dispute over unemployment insurance.

On April 19, 2002, Qwest and petitioner and Micka Oliver (the Olivers) entered into a Settlement Agreement and Release of All Claims (the settlement agreement) and a Side Letter of Understanding Re Settlement Agreement and Release of All Claims Between Qwest Corporation and the Olivers (the side letter). Under the settlement agreement, as provision "First", Qwest agreed to pay to the Olivers the sum of $201,000 "for alleged personal injuries, including emotional distress and compensatory damages; no portion of which represents payment of back, severance or front pay or lost benefits." The parties to the settlement agreement agreed to dismiss or withdraw pending lawsuits or administrative proceedings and released all claims between them.

Provision "Tenth" of the settlement agreement stated in part:

> The Olivers acknowledge and agree that Defendants have not made any representations to them regarding the tax consequences of any amounts received by them pursuant to this Agreement. Defendants shall issue to Baron Oliver * * * an IRS Form 1099 covering the payments described in Paragraph FIRST. The Olivers

agree to pay all federal or state taxes, if any, which are required by law to be paid with respect to this settlement. * * *

The side letter contained additional provisions relating to petitioner's retirement and pension benefits, including the following:

The parties further recognize that Mr. Oliver will be permitted to make a lump sum rollover of his pension to an account of his own choosing. The amount of benefit for which Mr. Oliver is eligible is as follows:

a. Total benefit which would have been payable on 5/1/2001, if then service pension eligible (i.e., 30 years) of service on that date), payable as lump sum: $19,692.81;

b. Benefit already received by participant, as a lump sum: $70,215.13;

c. Net benefit, payable as a lump sum on 5/1/2001: $122,477.68; and

d. Lump sum, with interest, payable on 5/1/2002: $129,471.16

Petitioner subsequently received distributions from a rollover individual retirement account created pursuant to the side letter.

In 2004, petitioner and/or his wife sold real property in Oklahoma for $65,000. The property was previously petitioner's mother-in-law's home.

Petitioner did not file Federal income tax returns for any of the years in issue before the notices of deficiency were issued. During the course of settlement negotiations while this case was pending, petitioner submitted to respondent a series of

unsigned Forms 1040, U.S. Individual Income Tax Return, for the years in issue.  The forms purported to be joint returns, but Micka Oliver declined to sign documents necessary for joint filing rates to be used in calculating petitioner's liability.

On the tendered Form 1040 for 2004, petitioner reported a $35,000 capital gain from the sale of the Oklahoma property, the difference between a sale price of $65,000 and a cost basis of $30,000.  That Form 1040 was submitted solely for the basis of settlement.  Respondent has conceded that petitioner's basis in the property was $30,000.

## OPINION

The record in these cases reflects a long and tortured history, and much of the record is incomprehensible.  The cases were filed in 2006 and were tried in December 2009 after two continuances, including a period during which a Judge retained jurisdiction and oversaw attempts to settle.  Part of the settlement negotiations involved submissions by petitioner and his wife in order to give them the benefits of income splitting and joint return rates.  When settlement negotiations failed, a statutory notice of deficiency was sent to petitioner's wife in 2009, and she filed a petition in response.  See Oliver v. Commissioner, T.C. Memo. 2011-43, filed this date.

Respondent sought to have petitioner's wife's case consolidated with petitioner's cases, but petitioner objected.

The Court denied respondent's motion to consolidate and petitioner's subsequent motion to continue his cases without consolidating them with his wife's case, because delay was not improving the preparation of these cases for trial. Thus these cases proceeded to trial, and petitioner's wife's case was tried separately months later. Petitioner continues to make arguments based on a stipulation proposed during the time that negotiations included an assumption that petitioner's wife would be involved in resolution of these cases, but that stipulation was not filed, petitioner's motion to compel that stipulation was denied, and it is superseded by the stipulation filed and exhibits received at trial.

Petitioner has consistently denied that the income in issue received by him during the years in issue is community property, despite having received the income during a long marriage. For purposes of these cases, respondent does not contend that the income is community income but has proposed resolution of petitioner's cases and his wife's case "in tandem" to avoid inconsistent results. To the extent that none of the parties in any of the cases contends that disputed items of income are community property, treating the income as separate property of petitioner does not lead to inconsistent results. Although the stipulation sets forth certain items of income, including Social Security disability benefits petitioner's wife received, these

amounts do not appear in the statutory notices and will be excluded from the computations of petitioner's taxable income, avoiding inconsistent results. To the extent that the record permits an allocation to petitioner or to his wife, such as gains from the sale of the Oklahoma property, the decision for 2004 will reflect our findings and the conclusions in this opinion. Finally, to the extent that undisputed items of income such as wages are community property under Arizona law, as a matter of law the share allocable to petitioner's wife should be excluded from the computations of petitioner's tax liability for years in which that income was received.

Many of the previously contested issues, such as petitioner's liability for section 72(t) additional tax on withdrawals from his pension account, have been resolved by concessions. Respondent has conceded several components of the originally determined deficiencies, and petitioner has stipulated the receipt of various items of taxable income. We do not address all of the arguments and accusations that rehash procedural history and are irrelevant to the issues to be decided.

Settlement Proceeds

The largest remaining issue is the taxability of $201,000 in settlement proceeds petitioner received in 2002. All other income items have been stipulated.

The definition of gross income under section 61(a) broadly encompasses any accession to a taxpayer's wealth. <u>Commissioner v. Schleier</u>, 515 U.S. 323, 327-328 (1995); <u>United States v. Burke</u>, 504 U.S. 229, 233 (1992). Absent an exception in another statutory provision, settlement proceeds must be included in gross income. <u>Commissioner v. Schleier</u>, <u>supra</u> at 328; <u>United States v. Burke</u>, <u>supra</u> at 233.

Section 104(a)(2) excepts from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness".

As to the settlement proceeds, the stipulation states:

> With respect to the 2002 taxable year:
>
> a. Petitioner agrees that he received settlement proceeds from Qwest Corporation in the gross amount of $201,000.00 (though he does not concede that all such proceeds are taxable and reserves the right to argue that some portion is excludable from income).

Respondent's opening brief explains that

> In Respondent's Pretrial Memorandum, it was contemplated that petitioner may attempt to argue that the cash settlement proceeds, or some portion thereof, were not taxable pursuant to I.R.C. § 104(a), which provides that gross income does not include damages received on account of personal physical injuries or physical sickness. Petitioner did not raise the issue and, therefore, respondent will not address it herein.
>
> Rather, petitioner, in his pretrial memorandum and at trial, appears to argue that the cash settlement proceeds in the amount of $201,000.00 paid by Qwest in

> 2002, or some unspecified portion thereof, are not taxable because they constitute the same monies received pursuant to taxable distributions in 2003 and 2004. In other words, petitioner contends that the cash settlement proceeds were put into some sort of retirement vehicle, such that it caused distributions to be reported when portions of such funds were withdrawn in later years.

As respondent notes, petitioner testified that he used the settlement proceeds to build a home. Petitioner has stipulated the receipt of distributions from his retirement account in subsequent years and the taxable amount of each distribution. The source of the distributions appears from the record to be petitioner's entitlements under the side letter, totally separate from the $201,000 payment to which he was entitled under the settlement agreement. Although petitioner insists that the source of the later distributions was the $201,000 payment, there is neither factual support nor legal authority for petitioner's apparent theory as to why the settlement proceeds received in 2002 are not taxable in that year.

Petitioner also asserts that the dispute with Qwest began with a "choking incident" and that he was told by attorneys involved in his Federal District Court case that the settlement was not taxable. These assertions, however, are unsupported by evidence and are contradicted by the stipulation about the issues in the Qwest lawsuit and the terms of the settlement agreement. In any event, what he may have been told by unidentified attorneys is inadmissible and irrelevant.

Petitioner has neither alleged nor proven that any of the settlement proceeds he received in 2002 is allocable to physical injuries. He has not identified any physical injuries sustained or physical sickness suffered as a result of Qwest's conduct; and the settlement agreement, while referring to personal injuries, does not allow for any allocation to physical injuries or sickness. Thus we conclude that no portion of the settlement proceeds is excludable from taxable income.

Oklahoma Real Property

Petitioner testified that the Oklahoma property was purchased when petitioner took over payments on property that was the home of his mother-in-law. Respondent has conceded that petitioner had a basis of $30,000 in the property, which was sold in 2004. Petitioner has not presented any reliable evidence of basis, so respondent's concession is the maximum that he may be allowed. A reasonable inference from the record, however, is that petitioner and his wife shared equally in the proceeds from sale of the property.

The terms of sale of the real property are not in evidence, partly because petitioner refused to stipulate and objected to relevant documents respondent obtained from third-party sources. Petitioner testified that he continued to receive payments after 2004, but we have no way of determining what payments were received when, how much of the payments represented interest or

principal, and how much gain would be reportable each year on the installment method. We accept, however, respondent's offer to resolve this case in tandem with petitioner's wife's case. The amount of income that petitioner must recognize from the sale of the real property in 2004 is his community share of the interest and gain received during that year as decided in Oliver v. Commissioner, T.C. Memo. 2011-43, rather than the $35,000 determined in the statutory notice. To that extent, we conclude that respondent has conceded the excess amount and that petitioner's admission in the Form 1040 cannot be given weight because it was provided as part of settlement negotiations. See Fed. R. Evid. 408.

Deductions and Exemptions

During trial and in his posttrial brief, petitioner has claimed entitlement to unspecified deductions and to exemptions for his wife and son. There is no evidence in the record, however, that would substantiate any deductions. Moreover, because he has not elected to itemize deductions by filing returns, he is entitled only to the standard deduction. See sec. 63(e). The standard deduction is that available to a married person filing separately, as determined in the statutory notices. Petitioner has not addressed the requirements for dependency exemption deductions under section 151 and has not shown that he qualifies for any dependency exemption deductions.

Additions to Tax

Section 6651(a)(1) imposes an addition to tax for failure to timely file a required return.  Section 6654(a) imposes an addition to tax for underpayment of required estimated tax. Respondent has the burden of production under section 7491(c) with respect to the additions to tax, but that burden is met where facts stipulated or admitted show that imposition of the addition to tax is appropriate.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Petitioner then has the burden of showing reasonable cause for failure to file timely or an exception to application of the section 6654(a) addition to tax.  Id.

Petitioner admits that he did not file timely returns and claims that he had only minimal income and was not required to file for years subsequent to the years in issue.  His reference to minimal income does not apply to the years in issue in view of the stipulation as to taxable distributions received and our conclusion as to the taxability of the settlement proceeds in 2002 and the capital gain in 2004.  The income received in each year exceeded the amount requiring that a return be filed.  See generally sec. 6012(a); sec. 1.6012-1, Income Tax Regs.  (The exemption amounts ranged from $3,100 for a married person filing a separate return to $15,900 for married persons filing jointly in 2004 and were less in prior years.  See Rev. Proc. 2003-85, sec. 3.10(1), 3.16(1), 2003-2 C.B. 1184, 1188.  It does not

appear that either petitioner or his spouse was age 65 or over in those years.)

In his posttrial brief, petitioner refers to health issues that are not in evidence. In any event, the continuing failure to file over a period of years is not excused by occasional health issues. See, e.g., <u>Jordan v. Commissioner</u>, T.C. Memo. 2005-266 (and cases cited therein). Petitioner has not established reasonable cause for failure to file the returns, and the additions to tax under section 6651(a)(1) will be sustained. Respondent has conceded the additions to tax under section 6651(a)(2).

The parties stipulated to the effect that petitioner had a tax liability of $7,018 for 1999. The notices of deficiency credited petitioner with amounts withheld in calculating the underpayment of estimated taxes due for purposes of section 6654. Because the record establishes that petitioner had a tax liability for 1999 and that petitioner failed to file returns for 2002 and 2003, he was required to pay estimated taxes equal to 90 percent of the tax owed for 2000, 2003, and 2004. See sec. 6654(d)(1)(B). None of the exceptions in section 6654(e) applies. The additions to tax, recalculated to reflect redetermined deficiencies, will be sustained.

<u>Decisions will be entered</u>

<u>under Rule 155</u>.