T.C. Memo. 1996-536

UNITED STATES TAX COURT

BEVERLY T. RUTT-HAHN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12947-94.                    Filed December 5, 1996.

Beverly T. Rutt-Hahn, pro se.

Katherine Holmes Ankeny, for respondent.

MEMORANDUM OPINION

PAJAK, Special Trial Judge:  This case was heard pursuant to
section 7443A(b)(3) of the Code and Rules 180, 181, and 182.
Unless otherwise indicated, all section references are to the
Internal Revenue Code in effect for the year in issue.  All Rule
references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's 1991 Federal income tax in the amount of $1,483. The issues we must decide are: (1) Whether petitioner may exclude from gross income under section 104 amounts received from her former employer pursuant to a settlement agreement; and (2) whether petitioner's legal expenses are properly deductible as a miscellaneous itemized deduction.

Some of the facts have been stipulated and are so found. Petitioner resided in Paradise Valley, Arizona, when her petition was filed.

For clarity and convenience, our findings of fact and opinion have been combined.

Petitioner Beverly Rutt-Hahn (petitioner) had been employed by the United States Postal Service (Postal Service) for a number of years. As of 1983, petitioner was an EAS-15 Supervisor of Mails and Delivery at the mail sectional center in Phoenix, Arizona. In July 1984, petitioner applied for disability retirement from the Postal Service, and her application was approved. Thereafter, she began to receive civil service retirement benefits in the form of a disability retirement annuity.

In October 1987, petitioner filed a lawsuit against the Postal Service in the United States District Court for the District of Arizona. In her "Complaint For Damages And Equitable

Relief", petitioner alleged that the Postal Service, et al., discriminated against her from "1976 to the present" based on her sex, age (then 48), handicap (heart disease; stress-induced illness), and in retaliation for having filed prior Equal Employment Opportunity complaints.  Petitioner specifically alleged, among other things, that:

> 3.2  Defendants pursued a policy and practice of failing to provide female employees, and older females particularly, with equal opportunities for "details" (temporary promotions) and training in the letter carrier, supervisory and station management workforce of the U.S. Postal Service.

> *    *    *    *    *    *    *

> 3.6  Defendants' policy and practice of providing certain employees with "details" (temporary promotions) to higher EAS levels, which experience defendants then consider essential or desirable for promotion into higher level positions has a disparate impact on females and particularly those aged 40 and older.

> 3.7  Defendants treated plaintiff differently from similarly situated male employees and employees under age 40 in that:

> (a)  Plaintiff was held at level EAS-15, where she performed successfully, during all relevant times herein, but was not selected for promotions into positions for which she applied at levels EAS-16 through 20 from 1976 through 1984.

> (b)  Plaintiff was denied higher level training details, denied equal access to carrier supervisory assignments and denied officer-in-charge assignments by defendants' agents.

> (c)  Plaintiff's lack of higher level training details, officer-in-charge assignments and/or lack of experience in carrier supervision were used as reasons and/or pretexts for denial of promotion.

(d)  Plaintiff was unfavorably evaluated by her supervisors and unfavorable evaluations were maintained in her personnel files.

(e)  Plaintiff was issued discriminatory directives by her supervisors including letters of deficiency, warning, instruction and concern.

3.8  Plaintiff was coerced into withdrawing a complaint of sex discrimination filed in 1979 by statements from the Director of Employee and Labor Relations that her complaint would harm her career opportunities.

\* \* \* \* \* \* \*

3.11  Defendants' discriminating letters and evaluations in 1981 created a chilling effect of such proportion that it was fruitless to apply for promotions for which she was qualified.

3.12  Defendants treated plaintiff differently from similarly situated employees by failing to accommodate plaintiff's handicapping conditions of heart disease and stress induced illness from November 1983 to the present \* \* \*.

3.13  As a result of filing complaints of violations of her equal employment opportunity, plaintiff was denied training details and assignments, denied promotions, given unfavorable evaluations, discouraged from applying for promotions and coerced into withdrawing a complaint alleging sex discrimination.

Petitioner based her discrimination allegations on the following:

1.1  [Title VII of] The Civil Rights Act of 1964 as amended, 42 USC Sec. 2000 e-16(c);

The Age Discrimination in Employment Act, as amended, 29 USC Sec. 621, et seq.;

The Civil Rights Attorneys Fee Act of 1976, as amended, 42 USC Sec. 1988;

39 USC Sec. 409, and application thereof by the courts, permitting judicial review of final decisions of the U.S. Postal Service;

Petitioner's complaint requested, in relevant part, the following relief:

(4) Equitable relief to make [plaintiff] whole, including:

(a) Back pay and retroactive promotion as justified by the evidence * * *.

(b) If plaintiff cannot be reinstated because of the discriminatory work environment, payment for training and education needed to place plaintiff in work consistent with her handicap, at a level to earn comparable wages outside the Postal Service to those she could have earned but for the discrimination.

(c) Front pay and benefits until plaintiff obtains comparable employment described in (b) above, or until early retirement age if she cannot return to work because of the residual effects of the discrimination.

(d) Recomputation of retirement benefits to reflect the retroactive promotions and pay.

(e) Publication of notices to all postal employees as to plaintiff's quality work performance and prevailing on issues of discrimination.

(f) Reasonable attorney fees and costs of suit for the administrative and judicial proceedings in these cases.

(g) Such other and further relief as the court may award.

Petitioner's "First Amended Complaint For Damages And Equitable Relief", filed in January 1988, was identical with respect to the above quoted language and presented no relevant changes.

Petitioner and the Postal Service settled petitioner's lawsuit and entered into a written settlement agreement (the

agreement) on August 22, 1991.  The agreement provided that the parties,

> having agreed to compromise and settle any and all claims, as set forth below, including, without limitation, claims for injunctive relief, back pay, damages, retroactive promotions, attorneys' fees, and costs, that the said plaintiff may have against the defendant, and/or the United States Postal Service, and/or any former or current officers, employees and/or agents of the United States Postal Service, it is agreed by the parties as follows:

> 1.    The United States Postal Service agrees to pay to plaintiff Beverly T. Rutt-Hahn the sum of $75,000.  It is understood and agreed that plaintiff will be responsible for the payment of any taxes with respect to this sum.

> 2.    The United States Postal Service agrees to adjust the records of plaintiff Beverly T. Rutt-Hahn to reflect a promotion to the maximum of an EAS-20 as of January 10, 1981 through the effective date of her retirement.  This information will be transmitted by the Postal Service to the Office of Personnel Management (OPM) which will then be responsible for recalculating and paying to plaintiff whatever additional monies may be due and owing to her, and any adjustments to her retirement, as a result of the EAS-20 promotion information supplied by the Postal Service adjusting plaintiff's records. * * * In addition, the Postal Service agrees to pay to OPM the requisite retirement contributions to the Civil Service Retirement and Disability Fund on its behalf and on behalf of plaintiff, necessary for OPM to process the necessary adjustments described above.  The parties agree that the adjustment of plaintiff's records is not intended to entitle plaintiff to any benefit other than those monies and retirement adjustments described above to be determined by OPM.  The actions of the United States Postal Service as set forth in paragraphs one (1) and two (2) above are accepted by plaintiff and her counsel as fully discharging, without limitation, all claims of plaintiff and her counsel including but not limited to backpay, damages, attorneys' fees and costs.

> 3.    Upon completion by the Postal Service of the step set forth in paragraph one (1), above, and the

Postal Service's transmission of information to OPM as set forth in paragraph two (2), above, and assurance from OPM of its approval and further action, plaintiff agrees to stipulate to a dismissal, with prejudice, of the above-styled litigation, namely <u>Beverly T. Rutt-Hahn v. Anthony M. Frank, Postmaster General of the United States Postal Service</u>, No. CIV. 87-1619 PHX WPC. In addition, after execution of this Settlement Agreement and OPM's approval, plaintiff also agrees to withdraw, with prejudice, her claim for attorneys' fees, costs and other relief in the pending Equal Employment Opportunity Commission, Office of Federal Operations' appeal * * *.

4.    Each party shall bear its own respective costs and counsel fees.

5.    By this Settlement Agreement plaintiff waives, releases and abandons any and all claims against the defendant, the United States Postal Service, its officers, agents and/or employees, whether past or present, alleged either in the above-entitled litigations in paragraph three (3) or in any EEO complaint or litigation presently filed or pending in any forum whatsoever, as well as any and all other claims arising out of the events of said litigations and other EEO complaints, and agrees to accept those United States Postal Service actions outlined in paragraphs one (1) and two (2) in full and complete settlement and satisfaction thereof.  Plaintiff also waives, releases and abandons any and all rights or claims she may have or may allege to have to re-employment with the Postal Service either now or in the future.  Plaintiff agrees that this Settlement Agreement constitutes <u>res judicata</u> of all of her claims above described and that she will not raise, litigate or relitigate any such claims in any other proceeding, whether judicial or administrative.

In accordance with the agreement, the Postal Service issued petitioner a check for $75,000 on September 30, 1991.  By a second check dated December 11, 1991, the Postal Service paid petitioner $23,106.64 as back payment of her increased retirement

benefits.  There is no dispute that petitioner received these payments in 1991.

On her 1991 Federal income tax return, petitioner subtracted $41,063, which represents the legal expenses she incurred in prosecuting her action against the Postal Service, from the $75,000 payment.  She then reported the difference of $33,937 as "Other income" on line 22 of her return.  She reported $42,719 of pension and annuity income, which included the $23,106.64 of increased retirement benefits received for her retroactive promotion.  Petitioner also reported wages she received from her employment with Specialty Graphics in 1991.

Respondent determined that petitioner was not entitled to exclude the $41,063 in legal expenses from income.  Respondent further determined that petitioner's legal expenses were deductible as a miscellaneous itemized deduction.

Petitioner now argues that, under section 104(a)(2), neither the $75,000 payment nor the increased retirement benefits are taxable income.  Petitioner bears the burden to prove she is entitled to exclude the payments she received in 1991 from income.  Rule 142(a).

Except as otherwise provided, gross income includes income from all sources.  Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955).  While section 61(a) is to be broadly construed, statutory exclusions from income must be narrowly

construed. Commissioner v. Schleier, 515 U.S. ___, 115 S.Ct. 2159, 2163 (1995).

Under section 104(a)(2), gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness". Section 1.104-1(c), Income Tax Regs., provides "The term 'damages received (whether by suit or agreement)' means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution."

Thus, an amount may be excluded from gross income only when it was received both: (1) Through prosecution or settlement of an action based upon tort or tort type rights; and (2) on account of personal injuries or sickness. Commissioner v. Schleier, 515 U.S. at ___, 115 S. Ct. at 2166-2167.

Where amounts are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such amounts are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992); Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part 70 F.3d 34 (5th Cir. 1995). The "critical question is, in lieu of what was the settlement amount paid?" Bagley v. Commissioner, 105 T.C. 396, 406 (1995). Determination of the nature of the claim is factual. The most important

element is the intent of the payor.  <u>Robinson v. Commissioner</u>, <u>supra</u> at 127.

As enumerated in the settlement agreement, the Postal Service agreed to pay petitioner $75,000 to settle petitioner's claims.  In her initial complaint and her amended complaint, petitioner based her claims on Title VII of the Civil Rights Act of 1964 (CRA of 1964), Pub. L. 88-352, 78 Stat. 253 (current version at 42 U.S.C. sec. 2000e (1994)), and on the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602 (current version at 29 U.S.C. secs. 621-634 (1994)).

The Supreme Court has held that recoveries received for the settlement of claims based on Title VII of the CRA of 1964 are not excludable from gross income under section 104(a)(2).  <u>United States v. Burke</u>, <u>supra</u>.  The Supreme Court has also held that recoveries received for claims based on the ADEA are not excludable from gross income under section 104(a)(2). <u>Commissioner v. Schleier</u>, <u>supra</u>.  In both cases, the Supreme Court concluded that because the statutes in question did not create remedies for personal injuries, the causes of action invoking those statutes were not based upon tort or tort-type rights.  <u>United States v. Burke</u>, <u>supra</u> at 241-242; <u>Commissioner v. Schleier</u>, 515 U.S. at ___, 115 S. Ct. at 2167.  With regard to both Title VII and the ADEA, the Supreme Court stated:

> Like the pre-1991 version of Title VII, the ADEA provides no compensation "for any of the other traditional harms associated with personal injury."

> Monetary remedies under the ADEA are limited to back wages, which are clearly of an "economic character," and liquidated damages, which we have already noted serve no compensatory function. Thus, though this is a closer case than Burke, we conclude that a recovery under the ADEA is not one that is "based upon tort or tort type rights."

Commissioner v. Schleier, 515 U.S. at ___, 115 S. Ct. at 2167. Consequently, petitioner is not entitled to exclude from income the $75,000 she received from the Postal Service.

Petitioner also received $23,106.64 from the Office of Personnel Management reflecting changes to her disability retirement benefits. Petitioner appears to make two basic arguments for exclusion of the disability retirement benefits. First, she considers it to be part of the total settlement she received from the Postal Service, and therefore excludable under section 104(a)(2). For the reasons stated above, the increased retirement benefits are not damages received on account of personal injuries or sickness within the meaning of section 104(a)(2).

Petitioner also cites section 104(a)(4) and argues that gross income does not include a "disability annuity", and therefore the payment in question is not income.

In the settlement agreement, the Postal Service agreed to adjust petitioner's records to reflect a promotion, and then transmit the information to the Office of Personnel Management, which would then recalculate and pay to petitioner any additional retirement benefits due based on her retroactive promotion. As

noted in the settlement agreement, the retirement benefits come from the Civil Service Retirement and Disability Fund.  Though not explicit in the record, we assume petitioner was a participant in the Civil Service Retirement System (CSRS), 5 U.S.C. section 8331 et seq., a mandatory pension plan for Federal employees hired prior to January 1, 1984.  Distributions from the CSRS are subject to taxation under section 72 pursuant to section 402(a).  CSRS is a plan that meets the requirements of section 401(a).  The law is well established that section 72 governs the taxation of distributions received pursuant to the CSRS.  Malbon v. United States, 43 F.3d 466 (9th Cir. 1994).

The $23,106.64 of retirement benefits petitioner received came from her Federal pension plan.  Section 61 specifically provides that gross income includes "pensions".  Sec. 61(a)(11). Section 104(a)(4) excludes from gross income:

> amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces * * * Geodetic Survey or the Public Health Service, or as a disability annuity payable under the provisions of section 808 of the Foreign Service Act of 1980 * * *.

It is obvious that section 104(a)(4) does not apply to the facts in this case.  Haar v. Commissioner, 78 T.C. 864 (1982), affd. per curiam 709 F.2d 1206 (8th Cir. 1983); Bagnell v. Commissioner, T.C. Memo. 1993-378.

Based on the foregoing, we find that petitioner is not entitled to exclude from gross income the increased retirement benefits she received in 1991.

The issue of the deductibility of the $41,063 legal expenses is resolved by considering the context in which the expenses were incurred. A taxpayer is permitted to deduct legal fees under section 162 or section 212, provided that the fees have the necessary connection to profit-seeking activity. Pursuant to section 62(a), legal fees may be deducted from gross income as a business expense under section 162 if the fees are directly related to the taxpayer's trade or business. If the taxpayer's trade or business is that of being an employee, however, then the legal expenses will be subject to the limitation of section 62(a)(1) and will be treated as a miscellaneous itemized deduction pursuant to section 67.

Petitioner's lawsuit against the Postal Service arose from and was related to her prior employment with the Postal Service. Thus, her legal expenses originated from and were related to her trade or business of being an employee. Consequently, petitioner's legal expenses are a miscellaneous itemized deduction. We sustain respondent's determination on this issue.

To reflect the foregoing,

Decision will be entered for respondent.