**In re David B. JONES, and Linda S. Jones, Debtors.**

**No. 99–5737–8G1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 6, 2001.

---

Buddy D. Ford, Tampa, FL, for Debtors.

Donna A. Bucella, United States Attorney, Carol Koehler Ide, Trial Attorney, Tax Division, United States Department of Justice, Washington, DC, for USA.

### ORDER ON CROSS–MOTION FOR SUMMARY JUDGMENT BY UNITED STATES OF AMERICA

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Cross–Motion for Summary Judgment filed by the United States of America.

The Department of the Treasury—Internal Revenue Service (IRS) filed a Proof of Claim (Claim No. 6) in this chapter 11 case in the total amount of $2,991,771.11. The total amount claimed includes an income tax for the 1993 tax year in the principal amount of $1,722,536.00, plus interest and penalties on the tax.

The Debtors filed a written Objection to the Claim, and assert that Claim No. 6 should be disallowed in its entirety. Generally, the Debtors acknowledge that they received the sum of $4,360,417.00 in 1993 in connection with the settlement of certain claims that they held against a corporation known as Southeast Toyota Distributors, Inc. and other parties. The Debtors contend, however, that the settlement amount is excluded from their gross income for tax purposes by virtue of § 104(a)(2) of the Internal Revenue Code, because it was received "on account of personal injuries or sickness."

The IRS asserts that the settlement funds were not received by the Debtors on account of personal injuries or sickness, as required by § 104(a)(2), and that the funds therefore were not excluded from the Debtors' income in 1993. The IRS further asserts that there is no genuine issue as to any material fact with respect to this question, and that it is entitled to an order allowing Claim No. 6 as a matter of law.

### Background

On April 4, 2001, the Court entered an Order denying a Motion for Summary Judgment that had been filed by the Debtors. The factual record in this case has not been supplemented since the entry of that Order.

The Debtor, David B. Jones, was involved in the automobile industry since approximately 1971. In the late 1980's, Mr. Jones owned 100% of the shares of a South Carolina corporation known as Magic Toyota, Inc. (Magic Toyota). In 1986, Mr. Jones or Magic Toyota purchased a Toyota dealership in Beauford, South Carolina, and contracted with Southeast Toyota Distributors, Inc. to serve as a Toyota dealer. The dealership closed on March 31, 1989.

On April 17, 1991, Magic Toyota and Mr. Jones filed a Complaint against Southeast Toyota Distributors, Inc. (Southeast Toyota) and other Defendants in the United States District Court. On May 2, 1991, Magic Toyota and Mr. Jones filed an Amended Complaint. (Debtors' Exhibit 1,

submitted in connection with their Motion for Summary Judgment). The Amended Complaint, which was eighty pages in length, contained six Counts.

1. Count I was an action for Breach of Contract. In Count I, Magic Toyota and Mr. Jones alleged that (1) they had entered into a contract with the Defendants to become a Toyota dealer; (2) that the Defendants breached their contractual duty to exercise good faith and fair dealing; and (3) that Magic Toyota and Mr. Jones "sustained enormous financial damages" as a result of the breaches. Specifically, Magic Toyota and Mr. Jones alleged that they "had fewer cars to sell, had less desirable models available, had little or no control over the accessories that were provided on their vehicles, lost profits on new car sales, lost warranty and service business, lost finance and insurance business, lost used car business, lost repeat business, lost customer goodwill, and had to sell the business at a greatly reduced price." (Amended Complaint, ¶ 166).

2. Count II was an action for "Violation of South Carolina Code Section 39–5–10, Et Seq." In Count II, Magic Toyota and Mr. Jones alleged that the Defendants engaged in numerous acts of unfair methods of competition and unfair and deceptive trade practices in violation of the South Carolina statute. Magic Toyota and Mr. Jones claimed that they were entitled to the full damages permitted under the statute. (Amended Complaint, ¶ 245).

3. Count III was an action for "Violations of the Racketeer Influenced and Corrupt Organizations Act." In Count III, Magic Toyota and Mr. Jones alleged that they "were injured in their business and property by reason of the violations," and that they were therefore "pursuant to 18 U.S.C. section 1964(c),

entitled to recover threefold the damages they sustained." (Amended Complaint, ¶ 267).

4. Count IV was an action for fraud. In Count IV, Magic Toyota and Mr. Jones alleged that the Defendants made false representations to them, and knew that the representations were false at the time that they were made. Magic Toyota and Mr. Jones further alleged that they were damaged by the false representations "in that they received less than their fair allocation of new vehicles, suffered allocation penalties, lost sales, incurred business expenses related to their inability to obtain and therefore sell new cars," and that they were further damaged "in that they were not able to conduct business and were forced out of business, and otherwise suffered economic devastation." (Amended Complaint, ¶¶ 286, 287).

5. Count V was an action for "Actual and Punitive Damages against the Defendants for Violation of South Carolina Statute Section 56–15–30, et seq." In Count V, Magic Toyota and Mr. Jones alleged that the Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in violation of the statute, and further alleged that they were therefore "entitled to recover double their actual damages and punitive damages against the Defendants, pursuant to South Carolina Statute section 56–15–110." (Amended Complaint, ¶ 299).

6. Count VI was an action for injunctive relief against the Defendants. In Count VI, Magic Toyota and Mr. Jones requested that the Defendants be permanently enjoined from engaging in the sale and distribution of vehicles in the state of South Carolina, and also requested other injunctive relief. (Amended Complaint, ¶ 305).

In the Amended Complaint, Magic Toyota and Mr. Jones sought actual and punitive damages "in excess of $150,000,000.00." (Amended Complaint, p. 79).

Linda Jones was not named as a plaintiff in the District Court action.

Mr. Jones did not allege any personal injuries in the Amended Complaint, and did not seek damages for personal injuries or illness in the District Court action. (Doc. 85, Deposition Transcript of David Jones, p. 58; Doc. 83, Deposition Transcript of Donald Strickland, p. 54).

In August of 1991, Mr. Jones verified the Answers to certain Interrogatories propounded by a Defendant in the District Court action. (Debtors' Exhibit 3, Deposition Transcript of Donald Strickland, Exhibit 22). In response to a request to identify all expert witnesses whom the Debtor proposed to call at trial, Mr. Jones listed only two individuals, and stated that the individuals were "expected to testify concerning the economic damages sustained by the Plaintiffs." In response to a request to identify and itemize each element of damage that Magic Toyota and Mr. Jones were claiming in the lawsuit, Mr. Jones replied:

> The calculations of damages in this case will be complex and will by necessity involve expert testimony, as well as testimony from the Plaintiff, David B. Jones. The Plaintiffs are entitled to economic damages and losses for the breach of contract, fraud, unfair and deceptive trade practices and RICO violations of the Defendants. The actual damages are calculated based upon the profits available to the Plaintiffs, but for the breach of contract of the Defendants.

(Debtors' Exhibit 3, Deposition Transcript of Donald Strickland, Exhibit 22, Interrogatory No. 4). These responses duplicate the Answers to the Court's Interrogatories that Mr. Jones had furnished earlier in the case. (Debtors' Exhibit 3, Deposition Transcript of Donald Strickland, Exhibit 20, Interrogatories (d) and (e)).

At approximately the same time that the discovery responses were furnished, or shortly thereafter, Mr. Jones sent his attorney a handwritten "Statement of Damages through September 1, 1991." (Debtors' Exhibit 3, Deposition Transcript of Donald Strickland, Exhibit 13). The damages calculated by Mr. Jones included the following components: (1) Magic Toyota's losses in 1987, 1988, and 1989; (2) Mr. Jones' stock loss; (3) the purchase money loan owed to the seller of the dealership; (4) the loss of Mr. Jones' personal income; (5) interest; (6) a Judgment owed to World Omni Financial Corp.; (7) Mr. Jones' future earnings; and (8) Mr. Jones' loss of the name of his business.

The District Court action remained pending for approximately two years, until the parties settled the litigation on May 28, 1993. On that date, the Defendants' attorney confirmed the settlement by letter to counsel for Magic Toyota and Mr. Jones. (Debtors' Exhibit 5). The letter confirming the settlement essentially stated only that the parties had "agreed to settle the lawsuit on the same terms and conditions as the settlement of the *Toyota of Wilson* lawsuit," and that the parties would execute mutual general releases.

On June 24, 1993, the Debtors executed a General Release in favor of the Defendants named in the District Court action. The Release provided in part:

> David and Linda Jones and Magic Toyota, Inc .... for and in consideration of the payment of $4,360,417.00 to David and Linda Jones and $1,389,583.00 to Magic Toyota, Inc. the receipt and sufficiency of which is here-

by acknowledged, do hereby release and forever discharge [the Defendants].

(Debtors' Exhibit 3, Deposition Transcript of Donald Strickland, Exhibit 6). The author of the General Release cannot be determined from the record.

On various dates between July 9, 1993, and July 16, 1993, the Defendants' representatives executed a Settlement Agreement. (Debtors' Exhibit 6). The Settlement Agreement provided that it was "an Agreement of Settlement between David B. and Linda Jones and Magic Toyota, Inc.," on one hand, and Southeast Toyota and the other Defendants on the other hand. The Agreement further provided that Southeast Toyota would pay to David and Linda Jones and their attorneys the sum of $4,360,417.00 no later than June 28, 1993. The Settlement Agreement also contained provisions regarding the confidentiality of the Agreement, the disposition of documents, and the execution of the mutual releases.

On August 11, 1993, the Debtors' attorney forwarded a second, revised Release to the Debtors for their signature. (Debtors' Exhibit 8). The attorney, Donald Strickland, stated in the cover letter:

I spoke with Taylor Ward [the Defendants' attorney] today who approved the change of language in your General Release to incorporate language that the payment to you and Linda was for your personal injuries, which was always the intent of the settlement and original release. This change of language does not modify the release agreement at all, it simply states expressly what was otherwise implied from the language of "all claims, causes of action, suits and demands whatsoever in law or in equity."

The Debtors executed the revised Release on August 12, 1993. The revised General Release provided:

David and Linda Jones and Magic Toyota, Inc. . . . for and in consideration of the payment of $4,360,417.00 to David and Linda Jones *for their personal injuries* and $1,389,583.00 to Magic Toyota, Inc. the receipt and sufficiency of which is hereby acknowledged, do hereby release and forever discharge [the Defendants].

(Debtors' Exhibit 7)(Emphasis supplied). The Debtors also signed the Settlement Agreement on August 12, 1993, and the executed documents were forwarded to the Defendants' attorney on August 16, 1993. (Debtors' Exhibit 9).

A Notice of the Settlement was filed in the District Court, and the action was dismissed with prejudice.

The settlement payment to the Debtors was reported to the IRS on a Form 1099 prepared by Southeast Toyota. (Debtors' Exhibit 17, Deposition Transcript of George Fender, p. 6; Deposition Transcript of Colin W. Brown, Doc. 92 filed by the IRS, p. 51).

The Debtors filed a tax return for the 1993 tax year, and disclosed the receipt of the settlement amount on the return. The Debtors claimed, however, that the payment was excluded from their gross income pursuant to § 104 of the Internal Revenue Code.

On April 7, 1997, the IRS issued a Notice of Deficiency to the Debtors for the tax year ending on December 31, 1993. The tax deficiency asserted by the IRS relates to the Debtors' receipt of the settlement payment. The Debtors disputed the determination that a tax deficiency existed, and a petition was filed in the United States Tax Court. Prior to the trial in the Tax Court, however, the Debtors filed a petition under Chapter 11 of the Bankruptcy Code.

As set forth above, the IRS filed Proof of Claim No. 6 in the Debtors' Chapter 11 case in the total amount of $2,991,771.11. The total amount claimed includes income tax for the 1993 tax year in the principal amount of $1,772,536.00, plus interest and penalties on the tax.

The Debtors object to the Claim, and assert that the settlement was received "on account of personal injuries or sickness," and therefore is excluded from their income under § 104(a)(2) of the Internal Revenue Code.

### Discussion

### A. The Statute

Section 104(a)(2) of the Internal Revenue Code, as effective in 1993, provided as follows:

### TITLE 26. INTERNAL REVENUE CODE

### Subtitle A—Income Taxes

■ § 104. Compensation for injuries or sickness

(a) In general.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, *gross income does not include—*

. . .

(2) *the amount of any damages received* (whether by suit or agreement and whether as lump sums or as periodic payments) *on account of personal injuries or sickness.*

(Emphasis supplied). The term "gross income" is broadly defined in § 61(a) of the Internal Revenue Code as "all income from whatever source derived," subject only to the exceptions specifically set forth in the Code. The scope of § 61(a) is purposefully broad to promote Congress' intent to exert the full measure of its taxing power to bring any accession to wealth within the definition of income. *United States v. Burke,* 504 U.S. 229, 233, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992).

■ Section 104(a)(2), as quoted above, authorizes taxpayers to exclude certain recoveries from their gross income. It is well-established, however, that statutes creating such exclusions from income are narrowly construed. *Commissioner of Internal Revenue v. Schleier,* 515 U.S. 323, 328, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995)("Exclusions from income must be narrowly construed."); *Pipitone v. United States,* 180 F.3d 859, 861 (7th Cir.1999)("In contrast to the liberal construction afforded to § 61(a), exclusions from income are narrowly construed."); *Abbott v. United States,* 76 F.Supp.2d 236, 241 (N.D.N.Y.1999)("Inclusions in income must be broadly construed, while exclusions from income must be narrowly construed.").

■ It is also well-established that the taxpayer bears the burden of proving that a particular recovery falls within a specific statutory exclusion from income. "A taxpayer claiming an exclusion from income bears the burden of proving that his claim falls within an exclusionary provision of the Code." *Taggi v. United States,* 35 F.3d 93, 95 (2d Cir.1994), quoted in *Elpi v. United States,* 968 F.Supp. 54, 57 (D.Conn. 1997). "[T]he burden of proving that a claim falls within an exclusionary provision rests upon the party claiming the exclusion." *Abbott v. United States,* 76 F.Supp.2d at 242.

■ In *Commissioner of Internal Revenue v. Schleier,* 515 U.S. 323, 324–25, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995), the United States Supreme Court addressed the question of whether the settlement of a claim under the Age Discrimination in Employment Act was excluded from income

under § 104(a)(2). In evaluating the issue, the Supreme Court established a two-part test that a taxpayer must satisfy to exclude an item from income under § 104(a)(2).

In sum, the plain language of § 104(a)(2), the text of the applicable regulation, and our decision in *Burke* establish two independent requirements that a taxpayer must meet before a recovery may be excluded under § 104(a)(2). *First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights"; and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness."*

*Schleier,* 515 U.S. at 336–37, 115 S.Ct. 2159(Emphasis supplied). In *Schleier,* the Supreme Court concluded that no portion of the taxpayer's recovery was excludable from income. *Id.* at 337, 115 S.Ct. 2159.

■ In applying the two-part test, Courts have emphasized the necessity that a clear connection must exist between the personal injuries experienced by the taxpayer and his recovery of damages. According to the Sixth Circuit Court of Appeals, for example, the personal injuries must constitute the motivation behind the settlement. *Greer v. United States,* 207 F.3d 322, 329 (6th Cir.2000). "In other words, there must be a link between the personal injury and the amount of damages." *Abbott,* 76 F.Supp.2d at 242.

■ Courts look to a variety of factors to determine whether an adequate connection exists between any personal injuries claimed and the settlement.

We first look to the agreement itself for indicia of its purpose. If the agreement lacks express language of purpose, we look beyond the agreement to other evidence that may shed light on "the intent

of the payor as to the purpose in making the payment."

*Greer v. United States,* 207 F.3d at 329. Similarly, in *Pipitone v. United States,* 180 F.3d at 863–64, the Seventh Circuit Court of Appeals found that the most important factor to consider was the intent of the payor, where a settlement agreement lacks any express language explaining what the settlement proceeds were paid to settle.

■ The payor's intent in making the settlement is a critical factor under § 104(a)(2).

If the payor's intent cannot be clearly discerned from the settlement agreement, his or her intent must be determined from all the facts and circumstances of the case in issue there. Factors to consider include the details surrounding the litigation in the underlying proceeding, the allegations contained in the payee's complaint and amended complaint in the underlying proceeding, and the arguments made in the underlying proceeding by each party there.

*Robinson v. Commissioner of Internal Revenue,* 102 T.C. 116, 127, 1994 WL 26303 (U.S.T.C.1994). See also *Villaume v. United States,* 616 F.Supp. 185, 187 (D.Minn.1985). In determining the intent of the payor in making the settlement, Courts should consider whether the payor had been adequately notified of the personal injury claims. *Abbott,* 76 F.Supp.2d at 243; *Elpi v. United States,* 968 F.Supp. 54, 57–58 (D.Conn.1997).

**B. The April 4, 2001, Order on Debtors' Motion for Summary Judgment**

In the Order entered on April 4, 2001, the Court denied the Debtors' Motion for Summary Judgment. As it applied the facts to the prevailing legal principles under § 104, the Court discussed several fac-

tors indicating that the Debtors' recovery was not "on account of personal injuries or sickness."

First, the Settlement Agreement does not allocate any portion of the settlement amount to personal injury claims. In the Settlement Agreement, Southeast Toyota agreed to pay the Debtors and their attorneys the sum of $4,360,417.00. No additional information is set forth in the Agreement regarding the nature or origin of the claims being settled. The Agreement provides only for the payment of a fixed sum, and does not identify the purpose for the payment or the claims to which the payment relates. Consequently, the Agreement does not indicate that the payment to the Debtors was "on account of personal injuries or sickness." (Order on Motion for Summary Judgment dated April 4, 2001, p. 12).

Second, the Debtors did not allege any personal injuries in the Amended Complaint, and did not seek any damages for personal injury or illness in the District Court action. The requests for relief in the Amended Complaint are based only on the financial or economic damage suffered by the Debtors and Magic Toyota. The Debtors concede that no allegations of personal injury or sickness appear in the Amended Complaint. (Order, p. 13).

Third, in response to discovery initiated by the Defendants in the District Court action, the only damages disclosed by Mr. Jones were economic damages based upon lost profits. No discovery was taken or furnished regarding the physical condition of the Debtors. (Order, p. 13).

Fourth, during the parties' negotiations to settle the case, no discussions occurred concerning any claims for personal injuries asserted by the Debtors. The discussions focused only on the dollar amount of the settlement, and the merits of the underlying claims were not discussed. (Order, pp. 13–14).

Finally, the attorney who conducted the settlement negotiations on behalf of Southeast Toyota believed that he was settling the case for economic damages, and did not consider personal injuries at all in the settlement of the case. (Order, p. 14).

The factual record has not been supplemented since the entry of the Order on the Debtors' Motion.

## C. Recent authorities

At least two decisions arising under § 104(a)(2) recently have been issued by the Tax Court.

In *Griffin v. Commissioner of Internal Revenue*, 2001 WL 20924 (U.S.Tax Ct.), the taxpayer sued certain defendants for fraud, breach of contract, and various other causes of action arising from a financing and distribution agreement involving the taxpayer's automobile dealership. Neither the original complaint nor the amended complaint contained any allegations that the taxpayer had suffered any mental distress, and the taxpayer did not seek any damages for mental distress. The Complaint focused on the commercial losses of the taxpayer. The litigation was settled for the total sum of $6 million. The settlement agreement provided that the payment was to cover all claims, including mental anguish claims, that were pending or that might have been brought by the taxpayer.

An issue before the Tax Court was whether any portion of the settlement received by the taxpayer was excluded from income under § 104(a)(2). The Tax Court first looked to the settlement agreement to determine whether it contained any express language identifying the claims that were covered by the settlement. The Court then looked to other factors for

evidence of the intent of the payor in making the settlement. The Court concluded:

> Although there is a tangential reference to "mental anguish" in the settlement agreement as an example of potential claims "that might have been brought", there is no specific amount allocated to any of the 13 counts or any potential claims that petitioner might have had or that he might have subsequently attempted to perfect. Under these circumstances, petitioner has not shown that there was a direct link between the harm and the recovery; i.e., petitioner has not shown that the recovery was attributable to his personal injuries.

Since the settlement was "global" and the taxpayer did not show what portion of the settlement was attributable to personal injuries, the Tax Court held that the taxpayer failed to satisfy the second prong of the *Schleier* test. Accordingly, the recovery was not excluded from income under § 104(a)(2) of the Internal Revenue Code.

In *Dickerson v. Commissioner of Internal Revenue*, 2001 WL 233961 (U.S.Tax Ct.), a taxpayer filed a complaint against an insurance company alleging misrepresentation, conversion, and breach of fiduciary duty. The litigation was settled for the sum of $40,000.00. The issue was whether the taxpayer could exclude the settlement proceeds from her gross income under § 104(a)(2).

The Court first stated the general rule: "If the settlement agreement does not expressly state the purpose for which payment was made, the most important factor is the intent of the payor." In *Dickerson*, the release signed in connection with the settlement did not allocate the recovery among the various counts of the complaint.

Consequently, the Court then focused on the intent of the payor, and concluded that the insurance company in that case did not intend to compensate the taxpayer on account of personal injury. In reaching this conclusion, the Court considered the following factors:

1. The taxpayer's amended complaint against the insurance company contained no specific allegations regarding personal injury or sickness.

2. The negotiations leading to the settlement did not involve any discussion regarding any personal injuries suffered by the taxpayer.

3. Nothing in the record indicated that the insurance company was aware of any personal injury that the taxpayer may have suffered.

4. In agreeing to the settlement, the insurance company was motivated primarily by the risk that an award of punitive damages may be entered against it.

The Court concluded that no portion of the settlement proceeds were excluded from the taxpayer's gross income under § 104(a)(2).

## D. Application

■ The Court entered an Order on the Debtors' Motion for Summary Judgment on April 4, 2001. The legal principles set forth in that Order, and set forth again in this Order, remain the controlling law under § 104(a)(2) of the Internal Revenue Code. A recovery received by a taxpayer is excluded from income under that section only where the payment is "on account of personal injuries or sickness." Courts generally look first to the settlement agreement itself to determine the purpose of the recovery. If the agreement does not contain an express statement of the purpose, courts look to other factors to determine whether the payor under the settlement intended to compensate the taxpayer for personal injuries or sickness.

In the Order entered on April 4, 2001, the Court also found that certain factors were present in the record. These factors have not been refuted in this case:

1. The written settlement agreement does not allocate any portion of the total settlement amount to personal injury claims. Instead, the agreement provides only for the payment of a lump sum amount, and does not identify any particular claims to which the payment relates.

2. The Debtors did not allege any personal injuries in their Amended Complaint against Southeast Toyota, and did not seek any damages for personal injury or illness in the action filed in the District Court. The requests for relief in the Amended Complaint are based only on economic damages.

3. No discovery was taken regarding the physical condition of the Debtors, and the only information disclosed by the Debtors in response to the discovery propounded to them related to their economic damages.

4. No discussions regarding any personal injury claims occurred during the negotiations leading to the settlement. The discussions centered only on the dollar amount for which the case could be settled.

5. Counsel for the payor, Southeast Toyota, stated that he believed that he was settling the case for economic damages, and that he had neither heard of nor considered personal injuries in connection with the settlement.

The Court considers these factors in view of *Schleier* and its progeny, including *Greer, Griffin,* and *Dickerson.*

The settlement agreement does not allocate any portion of the recovery to personal injury claims, and other factors present in this case indicate that the payor did not intend to compensate the Debtors for any personal injuries. Consequently, the Court finds that the recovery received by the Debtors in 1993 was not "on account of personal injuries or sickness," and therefore is not excluded from income under § 104(a)(2) of the Internal Revenue Code.

Accordingly:

**IT IS ORDERED** that:

1. The Cross–Motion for Summary Judgment filed by the United States of America is granted.

2. The Objection to Claim No. 6 of the Internal Revenue Service filed by the Debtors, David B. Jones and Linda S. Jones, is overruled.

3. Claim No. 6 of the Department of the Treasury—Internal Revenue Service is allowed as filed in the amount of $2,991,771.11.