T.C. Summary Opinion 2005-43

UNITED STATES TAX COURT

SHAWN JEFFREY HINTZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21553-03S.               Filed April 14, 2005.

Shawn Jeffrey Hintz, pro se.

<u>Catherine S. Tyson</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax of $1,465 for the taxable year 2001.

After concessions, the issue for decision is whether petitioner is entitled to exclude from gross income $3,468 received as disability pension income from the Defense Finance and Accounting Service because his pension income received is due to a combat-related injury under section 104(b)(2)(C).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in San Antonio, Texas, on the date the petition was filed in this case.

From August 27, 1980, to March 26, 1984, petitioner served in the United States Army. While serving in the United States Army, petitioner was assigned a primary specialty of 11B10, infantryman.

Petitioner enlisted with the United States Army at the age of 18. After enlisting, petitioner went to basic training for 4 months at Fort Benning, Georgia. After basic training, petitioner was transferred to Fort McNair in Washington, D.C. While stationed at Fort McNair, petitioner was delegated to presidential guard assignment. This assignment included such

duties as presidential guard, battle reenactments,[1] and operation/field duty at different posts throughout the United States.  Petitioner was never in actual combat.

In February 1984, petitioner underwent a medical evaluation at Walter Reed Army Medical Center.  As a result of this evaluation, petitioner was diagnosed as having "bipolar disorder, manic, with mood-congruent psychotic features".  This diagnosis resulted in petitioner's being "relieved from assignment and duty because of physical disability incurred while entitled to basic pay and under conditions which permit * * * [his being placed] on the Temporary Disability Retired List" as of March 12, 1984. Petitioner's effective date of retirement was March 26, 1984.  On November 26, 1985, petitioner was removed from the Temporary Disability Retired List (TDRL) and put on permanent retirement as a result of permanent disability.

After his discharge from the United States Army, petitioner moved back to his parents' home in Eureka, California.  For a brief period, after his discharge, petitioner attended the College of the Redwoods, taking a variety of courses, with a special interest in sociology and psychology.  At the time of trial, petitioner was a first-year apprentice with a pipefitters union.  Sometime in 1984, petitioner was hospitalized in the General Hospital at Eureka during a psychiatric visit, where it

---

[1]We understand these reenactments to be combat simulations.

was discovered he had scarlet fever.  At this hospital, it was determined that his psychiatric symptomology was due to delirium.

During 2001, petitioner received disability pension income of $3,468 from the Defense Finance and Accounting Service.

By notice of deficiency, respondent determined that petitioner's disability pension income of $3,468 from the Defense Finance and Accounting Service in tax year 2001 is not excludable from gross income under section 104(b)(2)(C).

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing that the determination is in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  In certain circumstances, however, if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper tax liability, section 7491 places the burden of proof on the Commissioner.  Sec. 7491(a)(1).  Credible evidence is "'the quality of evidence which, after critical analysis, * * * [a] court would find sufficient * * * to base a decision on the issue if no contrary evidence were submitted'".  Higbee v. Commissioner, 116 T.C. 438, 442 (2001) (quoting H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995).  Section 7491(a)(1) applies only if an individual taxpayer complies with substantiation requirements, maintains all required

records, and cooperates with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews.  Sec. 7491(a)(2).

In this case, section 7491 is inapplicable because petitioner did not introduce any credible evidence with respect to the origination of his disability and failed to comply with the substantiation, cooperation, and record-keeping requirements. The burden of proof remains on petitioner to show that respondent's determination is in error.

Disability Pension Income

As previously stated, the issue for decision is whether under section 104(b)(2)(C) petitioner is entitled to exclude from gross income $3,468 of pension income because he claims it was received on account of a combat-related injury.  Respondent argues that petitioner has not introduced credible evidence as to the origination of his disability; thus the disability pension income is not excluded from gross income under section 104(b)(2)(C).  On the record, we agree with respondent.

As a general rule, the Internal Revenue Code imposes a tax on the taxable income of every individual.  Sec. 1.  Section 61(a) specifies that, "Except as otherwise provided", gross income for purposes of calculating taxable income means "all income from whatever source derived".  The Supreme Court has long reiterated the sweeping scope of section 61.  Commissioner v.

Schleier, 515 U.S. 323, 327 (1995); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-431 (1955); Banaitis v. Commissioner, 340 F.3d 1074, 1079 (9th Cir. 2003), affg. in part and revg. in part on another ground T.C. Memo. 2002-5. "Pensions and retirement allowances paid either by the Government or by private persons constitute gross income unless excluded by law." Sec. 1.61-11(a), Income Tax Regs.

Section 104, in contrast, provides an exclusion with respect to compensation for injuries or sickness. Such exclusions from gross income are construed narrowly. Commissioner v. Schleier, supra at 328; United States v. Burke, 504 U.S. 229, 248 (1992); Banaitis v. Commissioner, supra at 1079. Section 104(a) provides in pertinent part:

> SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS.
>
> (a) In General.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include--
>
> * * * * * * *
>
> (4) amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country or in the Coast and Geodetic Survey or the Public Health Service, or as a disability annuity payable under the provisions of section 808 of the Foreign Service Act of 1980; * * *

Congress enacted section 104(b) to curb perceived abuses of section 104(a)(4).[2]  Section 104(b)(1) provides that the exclusion under section 104(a)(4) is restricted to the classes of individuals described in section 104(b)(2), as follows:

> (2) Individuals to whom subsection (a)(4) continues to apply.--An individual is described in this paragraph if--
>
> > (A) on or before September 24, 1975, he was entitled to receive any amount described in subsection (a)(4),
> >
> > (B) on September 24, 1975, he was a member of any organization (or reserve component thereof) referred to in subsection (a)(4) or under a binding written commitment to become such a member,
> >
> > (C) he receives an amount described in subsection (a)(4) by reason of a combat-related injury, or
> >
> > (D) on application therefor, he would be entitled to receive disability compensation from the Veterans' Administration.

For purposes of section 104(b)(2)(C), the term "combat-related injury" means personal injury or sickness that is:  (1) Incurred as a direct result of armed conflict, while engaged in extra

---

[2]The legislative history explains the reasons for the 1976 amendments as follows:

> In many cases, armed forces personnel have been classified as disabled for military service shortly before they would have become eligible for retirement principally to obtain the benefits of the special tax exclusion on the disability portion of their retirement pay.  In most of these cases the individuals, having retired from the military, earn income from other employment while receiving tax-free "disability" payments from the military. * * * [H. Rept. 94-658, at 152 (1975), 1976-3 C.B. (Vol. 2) 695, 844.]

hazardous service, or under conditions simulating war; or (2) caused by an instrumentality of war.  Sec. 104(b)(3).[3]

As previously stated, during 2001, petitioner received disability pension income of $3,468 from the Defense Finance and Accounting Service.  Petitioner claims that he is entitled to exclude his disability pension income from gross income because he served in a combat-related specialty.[4]

To support his contention, petitioner provided copies of Form DD214, Certificate of Release or Discharge From Active Duty, Form DA 199, Physical Evaluation Board Proceedings, and a TDRL Evaluation.

Form DD214 summarizes petitioner's military service.  It shows that petitioner served in a primary specialty of 11B10, infantryman, and that he was separated from duty on account of a disability.  The decorations section of Form DD214 lists only

---

[3]Sec. 104(b)(3) also provides that "In the case of an individual who is not described in subparagraph (A) or (B) of paragraph (2), except as provided in paragraph (4), the only amounts taken into account under subsection (a)(4) shall be the amounts which he receives by reason of a combat-related injury."

[4]In his petition, petitioner refers to combat-related special compensation (CRSC).  CRSC provides additional compensation for certain retirees with qualifying disabilities rated at 60 percent or higher or for retirees with disabilities associated with the award of a Purple Heart decoration.  CRSC was not authorized until the passage of the Bob Stump National Defense Authorization Act for Fiscal Year 2003, Pub. L. 107-314, sec. 636, 116 Stat. 2574.  Since the tax year at issue in the present case, 2001, is prior to the authorization of such compensation, petitioner's reference to CRSC is erroneous.

normal basic training ribbons such as: Good conduct medal, expert badge W/M-16 rifle and hand grenades bars, army service ribbon, and NCO professional development ribbon. The decorations section of Form DD214 lacks any combat-related decoration such as a campaign ribbon. The record of service section of Form DD214 shows that petitioner did not serve in any foreign country. Moreover, petitioner admits he was never in actual combat.

To further support his contention that the pension income at issue in the present case is eligible for exclusion from gross income under section 104(b)(2)(C), petitioner provided a copy of Form DA 199, Physical Evaluation Board Proceedings. However, those sections of the form that relate to the origin of the medical problem have been left blank.

Moreover, in support of his contention, petitioner provided a copy of a TDRL Evaluation, a medical evaluation which took place on April 24, 1985, after petitioner had retired from active duty. The History of Original Illness section of the TDRL Evaluation reads: "See original Medical Board Summary, dated February, 1984." The Medical Board Summary has not been supplied by petitioner and is not in the record of this case.

The evidence petitioner presented and his own testimony show only that he served in the United States Army as an infantryman and that he was retired on account of his bipolar disorder. The evidence in the record does not show that his illness was

incurred as a direct result of any combat-related activity or under conditions simulating war. From the record, we conclude that petitioner suffered from bipolar disorder which may have resulted in part from the stress of routine military duty. Such a disorder without evidence of its direct result from combat-related activity is not a combat-related injury as defined by section 104(b)(3). Therefore, respondent's determination on this issue is sustained.

## Conclusion

We have considered all of the other arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>for respondent</u>.