T.C. Memo. 2008-87

UNITED STATES TAX COURT

MICHAEL A. AND MARY PETTIT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23666-05.                    Filed April 7, 2008.

<u>Richard B. Tomlinson</u>, for petitioners.

<u>Bryan E. Sladek</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a $20,300 deficiency
in and a $4,060 section 6662(a) penalty on petitioners' 2003
Federal income tax.[1]  The issues for decision are (1) whether
$75,749 petitioner Michael A. Pettit received in connection with

_____

[1]  All section references are to the Internal Revenue Code,
and all Rule references are to the Tax Court Rules of Practice
and Procedure.

the settlement of a lawsuit is excludable from gross income for 2003 pursuant to section 104(a)(2), and (2) whether petitioners are liable for the section 6662(a) penalty for 2003.

FINDINGS OF FACT

None of the facts, but all of the exhibits, have been stipulated, and the exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Michigan.

Before March 5, 2002, Michael A. Pettit (petitioner) was employed by Electronic Data Systems Corp. (EDS) as a facilities project coordinator. On March 5, 2002, EDS terminated petitioner as part of a workforce reduction. Petitioner's supervisor at EDS informed petitioner that he was selected for termination on the basis of his age and pay. At the time of his termination, petitioner was approximately 47 years old. EDS replaced petitioner with a facilities project coordinator who was younger than petitioner.

Petitioner filed an age discrimination lawsuit, pursuant to Michigan law, against EDS. The case eventually went to trial in the U.S. District Court for the Eastern District of Michigan (lawsuit). In the lawsuit, petitioner set forth a claim alleging physical injuries, emotional distress, and family problems arising out of his termination from EDS.

The lawsuit went to trial in September 2003. However, after 3-1/2 days of trial, the parties settled the case by executing a "Settlement Agreement and Release" (settlement agreement). The settlement agreement provided that petitioner "presented evidence of serious emotional distress during trial" of the lawsuit. Pursuant to the settlement agreement, EDS agreed to pay petitioner $240,000. EDS paid petitioner $120,000 in 2003 ($120,000 payment). The settlement agreement provides that the $120,000 payment

> is to be apportioned as follows: Of the first payment of One Hundred Twenty Thousand Dollars ($120,000), Forty Four Thousand Two Hundred and Fifty Dollars and sixteen [sic] ($44,250.12) shall be attributed to lost wages and shall be tendered in a check which will be issued as a payroll check with applicable withholding on which an IRS Form W-2 will be issued; the remaining Seventy Five Thousand Seven Hundred and Forty Nine Dollars and Eighty Eight cents ($75,749.88) of the first payment and the entire second payment of One Hundred and Twenty Thousand Dollars ($120,000.00) shall be attributed to emotional distress, pain & suffering and other non-wage damages and an IRS Form 1099 shall be issued.

Petitioner's annual salary at EDS was $59,000. In the settlement agreement, petitioner and EDS agreed to, and calculated, the allocation of $44,250.12 to lost wages to reflect the amount of salary petitioner would have earned if he had not been terminated and had remained employed with EDS until December 31, 2002.

In return for the money EDS paid petitioner pursuant to the settlement agreement, petitioner agreed to the following:

SECOND:  <u>Complete Release and Dismissal of Lawsuit</u>
<u>(With Prejudice)</u>.

\*     \*     \*     \*     \*     \*     \*

In return for the consideration set forth above, Pettit
agrees to release EDS \* \* \* from all claims or demands
Pettit may have against EDS, including, but not limited
to, any claims related to Pettit's employment with EDS
or separation from that employment and any claims for
attorneys fees and costs.  This includes, without
limitation, a release of any rights or claims asserted
by Pettit in the lawsuit styled <u>Pettit v. Electronic</u>
<u>Data Systems, Inc.</u>, Case No. 02-CV-74357, which is
currently pending before the United States District
Court for the Eastern District of Michigan, Southern
Division. \* \* \*  This release also includes, without
limitation, a release by Pettit of any related or
unrelated wrongful discharge claims, contractual
claims, tort claims or any other actions.  This release
covers both claims that Pettit knows about and those he
may not know about.

\*     \*     \*     \*     \*     \*     \*

FOURTH:  <u>No Future Lawsuits</u>.

Pettit promises never to file a lawsuit, demand,
action or otherwise assert any claims that are released
in the Second Paragraph of this Agreement \* \* \*.

\*     \*     \*     \*     \*     \*     \*

THIRTEENTH:  <u>Entire Agreement</u>

For the purpose of implementing a full and
complete release and discharge of claims, Pettit
expressly acknowledges this Agreement is intended to
include in its effect, without limitation, all the
claims described in the preceding paragraphs, whether
known or unknown, suspected or unsuspected, and that
this Agreement contemplates the extinction of all such
claims, including claims for attorneys' fees.  Pettit
expressly waives any right to assert after the
execution of this Agreement that any such claim,
demand, obligation, or cause of action has, through
ignorance, oversight, or for any other reason, been
omitted from the scope of this Agreement.

This is the entire agreement between Pettit and EDS, and supersedes and prevails over all other prior agreements, understandings or representations by or between the parties, whether oral or written. This Agreement may not be modified or amended, and there shall be no waiver of its provisions, except by a written instrument executed by Pettit and a corporate officer of EDS. EDS has made no promises to Pettit other than those in this Agreement.

The accounting firm of Belger and Associates prepared petitioners' 2003 joint Federal income tax return. On petitioners' timely filed 2003 return, petitioners reported $44,250 of the $120,000 payment as wages. Petitioners did not include $75,750 of the $120,000 payment as other income. Instead, on "Statement 1 - Form 1040, Line 21 - Other Income", petitioners calculated their other income as follows:

| Description | Amount |
| --- | --- |
| Debt canceled | $2,887 |
| Debt canceled | 1,759 |
| Settlement | 75,750 |
| Nontaxable sec. 104 | (75,750) |
| Total | 4,646 |

The disclosure on their 2003 return reflected petitioners' understanding that the $75,750 of the $120,000 payment was not taxable (i.e., it was excludable under section 104).

Respondent determined that the amount of petitioners' other income on their 2003 return should be increased by $75,749 because this amount was not excludable from income.[2] Respondent also determined a section 6662 penalty for 2003.

OPINION

## I.  Burden of Proof

Generally, the taxpayer bears the burden of proving the Commissioner's deficiency determinations incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Petitioners have neither claimed nor shown that they satisfied the requirements of section 7491(a) to shift the burden of proof to respondent. Accordingly, petitioners bear the burden of proof.  See Rule 142(a).

## II.  Deficiency

It is well established that, pursuant to section 61(a), gross income includes all income from whatever source derived unless otherwise excluded by the Internal Revenue Code.  See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-431 (1955). Exclusions from gross income are construed narrowly. Commissioner v. Schleier, 515 U.S. 323, 327-328 (1995).

---

[2]  We note that although petitioners round up the $75,749.88 to $75,750 on their 2003 return, in the statutory notice of deficiency respondent rounded down the $75,749.88 to $75,749. This accounts for the $1 difference.

The Small Business Job Protection Act of 1996 (SBJPA), Pub. L. 104-188, sec. 1605, 110 Stat. 1838, amended section 104, as relevant here, to provide:

SEC. 104.   COMPENSATION FOR INJURIES OR SICKNESS.

(a) In General.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include--

* * * * * * *

(2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness;

* * * * * * *

* * * For purposes of paragraph (2), emotional distress shall not be treated as a physical injury or physical sickness.  The preceding sentence shall not apply to an amount of damages not in excess of the amount paid for medical care (described in subparagraph (A) or (B) of section 213(d)(1)) attributable to emotional distress.

"[T]he term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress."  H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041.  Section 104 as amended by the SBJPA generally is effective for amounts received after August 20, 1996.  SBJPA sec. 1605(d), 110 Stat. 1839.

"Damages received" means amounts received "through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in

lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs. In evaluating whether amounts received pursuant to a settlement agreement are excludable from income pursuant to section 104(a)(2), we look to the written terms of the settlement agreement to determine the origin and allocation of the settlement proceeds. See Metzger v. Commissioner, 88 T.C. 834 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); Jacobs v. Commissioner, T.C. Memo. 2000-59, affd. sub nom. Connelly v. Commissioner, 22 Fed. Appx. 967 (10th Cir. 2001).

Petitioner and EDS entered into a written settlement agreement. Petitioner testified that he was paid $75,749.88 of the $120,000 payment for "emotional distress, pain and suffering". Petitioner testified that the "pain and suffering" consisted of irritable bowel syndrome (a digestive problem) and headaches.

The term "emotional distress" includes symptoms such as insomnia, headaches, and stomach disorders which may result from such emotional distress. Congress amended section 104(a)(2) to specifically address the issue of whether damages for emotional distress are excluded from gross income and determined that such damages generally are not excludable from income.

The settlement agreement states that petitioner filed a lawsuit alleging physical injuries, emotional distress, and family problems arising out of EDS's termination.[3] Additionally, the settlement agreement explicitly states that petitioner "presented evidence of serious emotional distress during the trial", and it does not contain language indicating that petitioner presented any evidence of physical injuries or physical sickness.

Section 104 as amended by the SBJPA requires not only that damages compensate for personal injury, but also that the injury be physical. The settlement agreement makes no allusion to compensation for a physical injury or physical sickness. There is no apportionment of any of the settlement proceeds to a physical injury or physical sickness. The settlement agreement divides the $240,000 into two portions. One portion of the $120,000 payment is allocable to wages, and the remainder of the $120,000 payment and the entire second payment (which also totaled $120,000) are allocable to emotional distress, leaving no residue susceptible of attribution to physical injury (or to anything else). This omission and the affirmative language of the settlement agreement further support the conclusion that petitioner's damage award does not qualify for the section

---

[3] We note that the pleadings setting forth petitioner's claims in the lawsuit were not offered as evidence.

104(a)(2) exclusion. See <u>Seidel v. Commissioner</u>, T.C. Memo. 2007-45. Accordingly, we sustain respondent's deficiency determination.

III. <u>Section 6662 Penalty</u>

    A. <u>Burden of Production: Section 7491(c)</u>

Section 7491(c) provides that the Commissioner will bear the burden of production with respect to the liability of any individual for additions to tax and penalties. "The Commissioner's burden of production under section 7491(c) is to produce evidence that it is appropriate to impose the relevant penalty, addition to tax, or additional amount". <u>Swain v. Commissioner</u>, 118 T.C. 358, 363 (2002); see also <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). The Commissioner, however, does not have the obligation to introduce evidence regarding reasonable cause or substantial authority. <u>Higbee v. Commissioner</u>, <u>supra</u> at 446-447.

    B. <u>Section 6662</u>

Respondent determined that petitioners are liable for the section 6662 penalty for 2003. Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax due to negligence or disregard of rules or regulations or a substantial understatement of income tax. Sec. 6662(b)(1) and (2). An "understatement" is the difference between the amount of tax required to be shown on

the return and the amount of tax actually shown on the return. Sec. 6662(d)(2)(A). A "substantial understatement" exists if the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return for a taxable year or (2) $5,000. See sec. 6662(d)(1)(A). Respondent met his burden of production as there was a substantial understatement of income tax.

The accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good faith reliance on the advice of a professional. See id.

The record establishes that petitioners acted with reasonable cause and in good faith. Petitioners reasonably and in good faith relied on their return preparer. Petitioners disclosed $75,750 of the $120,000 payment and their basis for excluding this amount from income on their 2003 return. Accordingly, we conclude that petitioners had reasonable cause and acted in good faith as to any underpayment for 2003.

Therefore, we hold that petitioners are not liable for the penalty pursuant to section 6662(a).

IV.  <u>Conclusion</u>

In reaching our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.