T.C. Summary Opinion 2011-134

UNITED STATES TAX COURT

DENISE DIANA DENNIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22198-09S.             Filed December 5, 2011.

Denise Diana Dennis, pro se.

<u>Joline M. Wang</u>, for respondent.

WELLS, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986 in effect for the year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

this opinion shall not be treated as precedent for any other case. Respondent determined a deficiency of $11,396 in petitioner's 2007 Federal income tax and an accuracy-related penalty of $2,279 pursuant to section 6662(a). The issues we must decide are: (1) Whether proceeds from the settlement of a racial discrimination lawsuit under the Missouri Human Rights Act, alleging emotional distress, are excludable from gross income; (2) whether petitioner failed to report wages of $3,510; and (3) whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a).

## Background

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of facts are incorporated in this opinion by reference and are found accordingly. At the time she filed her petition, petitioner was a resident of Missouri.

Petitioner was employed at Grandview Care Center, Inc. (Grandview), from approximately August 2005 until she resigned in December 2005. During that time, she suffered racial harassment from Grandview's residents, who spoke to her using racial epithets. Although she complained to her supervisors, the situation did not improve; and she eventually resigned because her work environment was so unpleasant. After resigning, petitioner filed a lawsuit against Grandview under the Missouri Human Rights Act, claiming damages for "loss of self-esteem,

humiliation, emotional distress and mental anguish and pain, and related compensatory damages." Petitioner suffered no physical injuries as a result of the harassment. During June 2007, Grandview entered into a confidential settlement agreement and release (settlement) with petitioner. Pursuant to the settlement, Grandview paid petitioner $82,500. Of that amount, $3,674.24 constituted legal expenses, $35,471.59 was for attorney's fees, and petitioner received a check for $43,354.17.

On July 10, 2007, petitioner signed a document from her attorneys titled "Settlement Distribution - Tax Consequences", which stated, among other things:

> Counsel has informed client that there are complicated issues surrounding the taxability of employment discrimination awards and/or settlements. Counsel has further informed Client [sic] that payment for non-physical injuries are generally taxable * * *.

>       *        *        *        *        *        *        *

> Counsel informed Client [sic] that the law is unsettled as to whether emotional damages in non-physical injury cases are taxable. Counsel informed client about the decision in Murphy v. Internal Revenue Service 460 F.3d 79 (2006) holding that such damages are not always taxable. Counsel has urged client to obtain professional tax advice and provide a copy of the attached case to the tax professional to determine what, if any, impact it has on the resolution of the issue of the tax consequences associated with this settlement. Counsel has informed Client [sic] that there has been an appeal of that case and the case may be overturned and/or may not be followed by the Courts in Missouri * * *.

The case mentioned in that document, Murphy v. IRS, 460 F.3d 79 (D.C. Cir. 2006), was later vacated by the Court of Appeals for

the District of Columbia Circuit on December 22, 2006, <u>Murphy v. IRS</u>, 99 AFTR 2d 2007-396, 2007-1 USTC par. 50,228 (D.C. Cir. 2006). The Court of Appeals subsequently heard additional arguments before issuing another decision on July 3, 2007, in which it held that the taxpayer's compensatory award for emotional distress was taxable. <u>Murphy v. IRS</u>, 493 F.3d 170 (D.C. Cir. 2007). However, petitioner was not aware of those developments.

Petitioner received a Form 1099-MISC, Miscellaneous Income, reporting her income from the settlement. Petitioner spoke with several tax return preparers about her 2007 tax return. She first spoke with someone at Jackson Hewitt, to whom she gave a copy of her Form 1099. The tax return preparer at Jackson Hewitt asked her about the lawsuit. Petitioner told her: "Well, I am not supposed to disclose, but it is emotional distress." The tax return preparer at Jackson Hewitt was unsure about the tax consequences of the settlement, so she called someone. However, that person apparently did not know either, and Jackson Hewitt never gave petitioner an answer about the tax consequences. Petitioner then left Jackson Hewitt because she did not think the people there knew what they were doing.

Petitioner called another tax return preparer and inquired on the phone about whether the proceeds of a settlement from a lawsuit seeking damages for emotional distress were taxable. She

could not remember whom she had called, but she remembered that the office was at 47th and Troost. The person with whom petitioner spoke on the phone told her that the proceeds of the settlement were not taxable.

Next, petitioner sought advice from Jarods Accounting Services. However, petitioner did not give the tax return preparer at that firm a copy of her Form 1099 because she could not find it. She told the tax return preparer that she had received a confidential settlement but did not ask the preparer about the tax consequences of the settlement. The tax return preparer did not ask petitioner for the Form 1099, and she omitted from petitioner's return the income from the settlement.

During 2007, petitioner received $3,510 in wages from a woman named Barbara Biederman (Ms. Biederman) for whom petitioner provided caretaking services. However, petitioner did not report those wages on her return because she had not received a Form W-2, Wage and Tax Statement. Petitioner called Ms. Biederman once to inquire about the Form W-2 and was told it would be mailed to her. Petitioner believed that Ms. Biederman was withholding income tax from her wages, but Ms. Biederman actually withheld only Social Security and Medicare taxes. Petitioner did not report the wages she received from Ms. Biederman on her 2007 tax return.

Respondent mailed petitioner a notice of deficiency for her 2007 tax year on July 20, 2009. In the notice of deficiency, respondent determined that petitioner's income should be increased to reflect wages of $3,510 received from Ms. Biederman and other income of $82,500 from the settlement. Respondent allowed petitioner a deduction of $39,146 for her attorney's fees and legal expenses. Petitioner timely filed her petition with this Court.

## Discussion

As a general rule, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Gross income generally includes all income from whatever source derived. Sec. 61(a). The definition of gross income is broad in scope, while exclusions from income are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995). Damages (other than punitive) received on account of personal physical injuries or physical sickness may generally be excluded from gross income. Sec. 104(a)(2). For the damages to be excluded under this provision, the underlying cause of action must be based in tort or tort-type rights and the proceeds must be damages received on account of personal physical injury or sickness. Commissioner v. Schleier, supra at 337. Emotional

distress is not treated as a personal physical injury or physical sickness except for damages not in excess of the amount paid for medical care attributable to emotional distress.  Sec. 104(a) (flush language).

Petitioner has cited Murphy v. IRS, 460 F.3d 79 (D.C. Cir. 2006), to argue that the proceeds of her settlement compensating her for emotional distress should be exempt from income. However, as noted above, the Murphy decision petitioner cites was later vacated by the Court of Appeals.  Accordingly, we reject petitioner's argument that her income from the settlement was nontaxable.

We next consider whether petitioner owes income tax on the wages of $3,510 she received from Ms. Biederman.  Petitioner did not dispute that she failed to report her wages from Ms. Biederman on her tax return.  However, she contended that Ms. Biederman had told her that her Federal income tax was being withheld from her wages.  Respondent determined that petitioner's Federal income tax had not been withheld.  Because petitioner bears the burden of proof and offered no evidence to the contrary, we conclude that no income tax had been withheld from the wages petitioner received from Ms. Biederman and that petitioner failed to pay income tax on those wages.

Finally, we consider whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a).  Generally,

the Commissioner bears the burden of production with respect to any penalty, including the accuracy-related penalty. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). To meet that burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. Higbee v. Commissioner, supra at 446. The Commissioner has the burden of production only; the ultimate burden of proving that the penalty is not applicable remains on the taxpayer. Id.

Subsection (a) of section 6662 imposes an accuracy-related penalty of 20 percent of any underpayment that is attributable to causes specified in subsection (b), including a "substantial understatement" of income tax. Section 6664(c)(1) provides that the accuracy-related penalty shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position with respect to that portion and that the taxpayer acted in good faith with respect to that portion. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the relevant facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience,

knowledge, and education of the taxpayer."  Id.  Generally, the most important factor is the extent of the taxpayer's efforts to assess the proper tax liability.  Id.  An honest misunderstanding of fact or law that is reasonable in the light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith.  Remy v. Commissioner, T.C. Memo. 1997-72.

Petitioner is obviously unfamiliar with tax law.  She was advised by the attorneys who handled her lawsuit that she should seek professional advice regarding the tax treatment of her income from the settlement.  By advising her of the Court of Appeals' holding in Murphy v. IRS, 460 F.3d 79 (D.C. Cir. 2006), those attorneys also provided her with a reason to believe that the income from the settlement might not be taxable.[2]  Petitioner consulted three different tax preparation services, and none of them advised her that the income from the settlement was taxable. On the basis of petitioner's background, education, and actions seeking advice on a complex tax issue, we conclude that petitioner had reasonable cause for her position and acted in good faith on her belief, although mistaken, when she failed to

_____

[2]As noted above, by the time petitioner signed the "Settlement Distribution - Tax Consequences" document prepared by her attorneys on July 10, 2007, the decision in Murphy v. IRS, 460 F.3d 79 (D.C. Cir. 2006), had been vacated by Murphy v. IRS, 99 AFTR 2d 2007-396, 2007-1 USTC par. 50,228 (D.C. Cir. 2006) (vacated Dec. 22, 2006), and the Court of Appeals had decided Murphy v. IRS, 493 F.3d 170 (D.C. Cir. 2007) (decided July 3, 2007).  Accordingly, the information provided to petitioner by her attorneys was inaccurate even when she signed the document.

report her income from the settlement.  Consequently, we hold that petitioner is not liable for the accuracy-related penalty on the portion of her underpayment attributable to income from the settlement.

Petitioner contends that she acted reasonably in not reporting her income from Ms. Biederman because she did not receive a Form W-2 and mistakenly believed that Ms. Biederman had already withheld her Federal income tax.  However, it was not necessary that petitioner receive a Form W-2 in order for her to know that she had received compensation for her services for Ms. Biederman.  See, e.g., Brunsman v. Commissioner, T.C. Memo. 2003-291.  It was not reasonable for petitioner to simply omit that compensation on her tax return.  Accordingly, petitioner is not excused from liability for the accuracy-related penalty on the income she received from Ms. Biederman.

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.